Parker *v.* The Cutler Milldam Company.

GUILFORD D. PARKER *versus* THE CUTLER MILLDAM COMPANY.

20 353
85 119
20 353
90 567
20 353
91 352

20 353
105 78
105 79

Where the legislature created a corporation, and empowered it " to erect, maintain, repair, and rebuild a milldam on their own land across the head of Little River harbor, with flood gates thereto at least fifteen feet wide, so as to admit the passage of gondolas and boats at high water," the corporation may erect their dam across the head of the harbor, although it may not only be below high water mark, but across a part of the channel below where the tide ebbs and flows.

The words " *on their own land*," in the act, were not inserted to fix the place of building, but were intended merely to exclude any inference that the legislature designed to authorize the corporation to take the land of others for that purpose.

The possession of the dam and mills, and of the land on which they were erected, under the authority given, is sufficient evidence of title for defence of an action for damages done to the land of others by the flowing of the water.

The regulation of the navigable waters within the State, is vested in the sovereign power, to be exercised by laws duly enacted; and the navigation may be impeded, if in the judgment of that power the public good requires it.

And if the more apparent object be the profit of a grantee, it is the right and duty of that power to determine whether the public interest is so connected with the private, as to authorize the grant.

The corporation, while acting within the powers granted, is not liable for any injury suffered by an individual by altering the flux and reflux of the tide.

The colonial ordinance of 1641 extended the right of riparian proprietors *in the soil* from high to low water mark, where it did not exceed one hundred rods. But this was a qualified right to use the interest granted in such a manner as not to interrupt the rights of the public, as secured by the ordinance.

In rivers where the tide ebbs and flows, as well as in the sea, the right of taking fish is common to all the citizens, and extends to the taking of shell fish on the shore of a navigable river.

CASE for an injury to the fishing and water privileges of the plaintiff's land in Cutler, fronting upon tide water of Little River, by a dam erected by the defendants obstructing the river. In one count, the plaintiff alleged that the river was an arm of the sea, navigable, and a public highway. In the other, he claimed a prescriptive right to pass to and from the sea to his land unobstructed, and alleged a free enjoyment of this right, until the milldam was erected by the defendants.

Parker *v.* The Cutler Milldam Company.

The defendants, with the general issue, alleged by brief state-ment, that they had good right to erect the dam by force of an act of the legislature of Maine, passed March 16, 1836, enti-tled " An act to incorporate the Cutler Milldam Corporation." From the testimony given at the trial, before EMERY J. which is spread at full length upon the report, it seems that the plaintiff proved title in himself to the land described in the declaration ; that a dam was built by the defendants on land of which they had a deed, across where the tide ebbs and flows, and across the channel at the head of Little River harbor, and that they had four saw mills, and several lath machines carried by means of a head of water raised thereby ; that there was a place on the plaintiff's land to build a wharf ; and that before the build-ing of the dam fishermen used sometimes to dig clams for bait on the flats opposite the plaintiff's land. The plaintiff intro-duced evidence tending to show that some damage was occa-sioned to the plaintiff by the raising of the water higher upon the beach by the defendants' dam, although no part of his land was flowed. The defendants offered evidence tending to show, that the plaintiff's property was rendered more valuable by the building of the dam, to the admission of which the plaintiff objected, but it was admitted.

The Judge instructed the jury, that if they found the plain-tiff had sustained damage by reason of the dam, their verdict should be for the plaintiff for such damages as they should find he had sustained above the benefit extended to him by reason of the defendants' dam and mills. The jury found a verdict for the plaintiff, assessing the damages at ten dollars above the benefits derived from the dam and mills ; and also, under the direction of the Court to find on the subject, they found that the dam was erected across the head of Little River harbor. The verdict was to stand, be amended, or set aside, as in the opinion of the Court the law requires.

*Thacher*, for the defendants, contended that no action could be maintained upon the facts appearing in this case.

To show that the act was constitutional, he cited 10 Mass. R. 70 ; 3 Mass. R. 352 ; 1 Pick. 180 ; Angell on Tide Waters,

48, 107 ; 7 Pick. 344 ; 12 Pick. 476 ; 4 Pick. 460 ; 15 Wend. 113 ; 1 Penn. R. 462 ; 16 Pick. 101 ; 7 Greenl. 292.

The defendants were in possession, and the validity of their grant will be presumed until the contrary be shown. Angell on Tide Waters, 146 ; 2 Doug. 441 ; 6 Pick. 94 ; 16 Pick. 87.

No portion of the land of the plaintiff has been touched by the acts of the defendants. They have kept entirely within their act of incorporation. The legislature have power to grant away the right of the public, and no action lies for consequential damage to an individual occasioned thereby. 4 Pick. 460 ; 15 Wend. 113 ; 7 Greenl. 273 ; 1 Pick. 430 ; 7 Pick. 472 ; 12 Mass. R. 220 ; 17 Johns. 100.

But if the plaintiff is entitled to damages, he has mistaken the remedy. He should have proceeded under the statute of flowing. 11 Mass. R. 364 ; 1 Pick. 430.

*J. Granger,* for the plaintiff, said the main question was, whether the action was maintainable. The jury have found, that the plaintiff has sustained damages by the acts of the defendants above any possible advantages derived. The defendants attempt to justify under their act of incorporation. But this affords them no protection.

1. Because the dam is not erected in accordance with its provisions. The charter only authorizes them to erect it *on their own land.* It is not erected on their own land. The expression *across the head of Little River harbor,* is indefinite, and is limited by *their own land.* After purchasing the land of the proprietors, they should have erected their dam within low water mark, and not across the channel, where the land belonged to the public.

2. But if the dam had been erected in accordance with the act, the utmost that can be deduced in favor of the defendants from it, is merely a protection against an indictment for a nuisance, leaving those who are injured by the dam to their remedy by action. 5 Cowen, 165. A private act for the benefit of a particular corporation, is never to be so construed as to destroy the rights of others, unless such construction results from express words, or necessary implication. 4 Mass. R. 145.

An act authorizing an injury, without just compensation to the citizens injured by it, is void. 1 Fairf. 447.

3. This is not a case coming within the statute regulating mills. 12 Pick. 68; 2 Shepl. 473.

4. This is a public highway, and an obstruction of the right of way of an individual is the subject of damages. 8 Cowen, 159. This, however, is not an injury to the public, but to a few individuals. Where a nuisance occasions special damage to any particular person, he may recover damages, although others may also be injured. 7 Cowen, 609.

The opinion of the Court was by

Shepley J. — This corporation was created by the act approved March 16, 1836, Spec. Laws, ch. 123, and was " empowered to erect, maintain, repair and rebuild, a milldam on their own land across the head of Little river harbor in the town of Cutler, with flood gates thereto at least fifteen feet wide so as to admit the passage of gondolas and boats at high water." The counsel for the plaintiff contends, that the act did not authorise the corporation to build the dam below the highest ·point to which the tide usually flowed. The gates were to be constructed for the purpose of admitting gondolas and boats to pass through the dam at high water. The corporation is authorised to " use the water retained by said dam," which is to be built across, not above, the head of the harbor. This language exhibits an intention to permit the dam to be built in such a manner as to allow the corporation to retain and use the tide water. And the fact, that there is no natural fall in the river near that place, would tend to remove all doubts respecting the design of the act.

It is said, that the place of building was limited and nearly designated by that part of the act, which requires it to be built on their own land. The first section authorises the corporation to take and hold real estate, but it would own no land until a purchase had been made. It is the body corporate, not the corporators, that is authorised to build " on their own land." The provision must therefore have been inserted for some other

purpose, than to designate the place of building. It probably was to prevent any inference, that the legislature intended to authorise the corporation to take the land of others for that purpose.

The corporation is proved to have been in possession of the dam and mills, and of the lands on which they were erected, and that is sufficient evidence of title for this defence.

The regulation of the navigable waters within the State is vested in the sovereign power to be exercised by laws duly enacted. The navagation may be impeded, if in the judgment of that power the public good requires it. And if the more apparent object be the profit of a grantee, it is its right and duty to determine whether the public interest be so connected with it as to authorise the grant. To refuse it this right, would be to prevent the union of public and private interests for the accomplishment of any object.

The jury have found that the dam was erected across the head of Little River harbor, the corporation is not therefore liable for any injury, which the plaintiff may have suffered by obstructions to the navigaton, by altering the flux and reflux of the tide. This will embrace the flowing of the beach complained of as an injury to the plaintiff in repairing vessels; the alleged injury to his mill site by retaining the tide water; and the increased difficulty in navigating the river occasioned by the flood gates.

In rivers where the tide ebbs and flows as well as in the sea the right of taking fish is common to all the citizens. *Warren* v. *Mathews*, 1 Salk. 357; *Ward* v. *Creswell*, Willes, 265; *Carter* v. *Murcot*, 4 Burr. 2162. And in *Bagott* v. *Orr*, 2 B. & P. 472, this right was decided to extend to the taking of shell fish on the shore of a navigable river. The colonial ordinance of 1641 extended the right of the riparian proprietor in the soil from high to low water mark, where it did not exceed one hundred rods. But this was a qualified right to use the interest granted in such a manner as not to interrupt the rights of the public, as secured by the ordinance. The right of navigation was expressly reserved   And the right of each house-

holder to have free fishing, so far as the sea ebbs and flows, had been in the same ordinance declared. It was the policy of the colonial legislatures, instead of granting away any portion of the public right of fishery, to extend and enlarge it. Hence the claim and appropriation to public use of that which by the common law was private property, the fishery in rivers where the tide does not ebb and flow. It cannot readily be admitted under such a state of legislation to have been the intention of the legislature by that ordinance to part with any of the public rights of fishery. The right to fish in waters where the soil was private property, having been appropriated and secured to the public, a grant of the soil in navigable waters to an individual could not have been regarded as putting him in possession of greater rights than he would have had by owning it without such grant. And it would be a strange construction to consider the right of fishery as granted away indirectly by another part of the same ordinance, which declared it.

The testimony in this case does not prove any appropriation of the clam fishery to private use. The witnesses speak of the fishermen generally, and not of the owners of the flats, as taking them for bait.

The case does not show any such injury as will authorise the plaintiff to maintain the suit. It is not therefore necessary to examine the principles upon which the damages were assessed.

*Verdict set aside.*