# RIDGELY P. MELVIN et al.

## vs.

## JACOB SCHLESSINGER.

*Navigable Waters—Patent for Accretions—Act of 1862.*

The Act of 1862, ch. 129 (Code, Art. 54, sec. 47), giving to the proprietor of land bounding upon any navigable stream all accretions to said land, applies regardless of whether the accretions start at the shore and extend outward to the channel, or start at the channel and extend inward to the shore.          p. 343

The provision of the Act of 1862, ch. 129 (Code, Art. 54, sec. 49), that no patent thereafter issued shall impair or affect the rights of riparian proprietors on a navigable stream, *held* to preclude the issue to one person of a patent for accretions which lay between the channel of the stream and shore land belonging to another person, since this would not only exclude the latter from the use of the navigable stream, but would also prevent him from exercising his statutory right to make improvements into the waters in front of his land.          pp. 333-343

Whether the rights of riparian proprietors would be impaired or affected by the issuance of a patent, so as to fall within the prohibition of the statute, is largely to be determined upon the facts and circumstances of each particular case.          p. 343

*Decided April 8th, 1921.*

Appeal from the Circuit Court of Baltimore City (GORTER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Clarence A. Tucker,* with whom were *Knapp, Ulman & Tucker* on the brief, for the appellants.

*Wilbert L. Merriken* and *Roger B. Williams,* for the appellee.

A brief was, by leave of the court, submitted by *Floyd J. Kintner* and *Marbury, Gosnell & Williams,* as *amici curiae* and counsel for Harry M. Wagner.

PATTISON, J., delivered the opinion of the court.

On the 16th day of December, in the year 1916, Wm. N. Crisp, H. Emory Gray and Ridgely P. Melvin obtained a patent for a tract of land therein called "Billikin," containing eight and seventy-two hundredths acres bordering upon the Patapsco River, a navigable stream, in Anne Arundel County, Maryland.

On the 14th day of September, 1920, the said patentees, the appellants in this Court, entered into an agreement with the appellee, Jacob Schlessinger, to sell to him the said tract of land at and for the sum of $4,500, of which sum two hundred dollars were paid prior to the execution of said agreement and the balance was to be paid in thirty days from that time, when possession of said land was to be given to the purchaser, and a deed thereto was to be executed by them conveying to him a good and marketable title to said property.

The bill filed in this case by the appellants, asking for specific performance of the aforesaid contract of sale, alleged that they had offered to put appellee in possession of said property, and to execute and deliver to him a deed therefor conveying to him a marketable title thereto upon the payment to them of the balance of the purchase money, and that he had refused to pay the same, alleging, in his answer filed to said bill, that the patentees were not in possession of said property and could not convey to him a marketable title to said land, consisting of marsh that had formed in said river, because of the riparian rights of the owners of the fast land abutting thereon.

The land in question is at or near the town of Brooklyn, and immediately south of the Baltimore and Ohio Railroad bridge upon the Curtis Bay Branch of the railroad.

It appears from the evidence that the accretion commenced to form at or near the edge of the channel of the river and extended toward the shore, and at this time, except for a short distance south of the railroad bridge, the formation has reached the shore, and there, at the southernmost end of the patented land, it is separated from the upland only by a narrow and shallow stream or run, which at this time is not more than fifty feet in width. As stated by some of the witnesses, said stream or run in its upper course is so shallow that at low tide there is no water at all in it, and at such times a person can walk across it from the fast land to the land conveyed by the patent.

The evidence is in conflict as to whether the land described in the patent was, at the time of its issuance, at high tide covered by water.

The learned Judge in the court below, however, stated in his decree that upon the evidence before him he was of the opinion that the land in question was formed as "an island in the stream of the Patapsco River, a navigable water * * * and gradually extended toward the shore, and that at the time the patent was issued it was not at high tide covered by water," but held that because of the rights conferred upon the abutting land owners by the provisions of the Act of 1862, Chapter 129, or Sections 47, 48 and 49 of Article 54 of the Public General Laws of this State, the patentees could not convey unto the purchaser, the appellee, a marketable title thereto, and so dismissed the bill.

The first of these sections (Section 47) gives to the proprietor of lands bounding upon any navigable stream "all accretions to said land by the recession of said water, whether heretofore formed or made by natural causes or otherwise, *in like manner and to like extent* as such right may or can be claimed by the proprietor of land bounding on water not navigable."

The second of these sections (Section 48) gives to the proprietor of land such as those mentioned in the first section "the exclusive right of making improvements into the waters

in front of his land; such improvements and other accretions * * * shall pass to the successive owners of the land to which they are attached as incident to their respective estates," provided such improvements shall not "interfere with the navigation of the stream of water into which" they are made.

And the third section (Section 49) provides that "no patent hereafter issued out of the land office shall impair or affect the rights of riparian proprietors, as explained and declared in the two preceding sections; and no patent shall hereafter issue for land covered by navigable waters."

In *Goodsell* v. *Lawson*, 42 Md. 348, in speaking of the rights of the proprietor of lands bounding upon a navigable stream, this Court there said: "What are their rights as riparian proprietors? The Act of 1861-2, Ch. 129, has materially changed and enlarged the rights of the proprietors of lands bounding on navigable water, and to the proper understanding of that Act, it is necessary first to ascertain what those rights were previously, both as to land adjoining waters navigable and unnavigable. The grant of a tract of land bounding on the sea or any navigable water conveyed no right to the grantee to the land below high-water mark. From that point it belonged to the Sovereign, and while it might be granted to a citizen by express words, subject to the *jus publicum* of navigation and fishing, it did not pass as an incident to the ownership of the adjacent land. Any increase of the soil, however, formed by the waters gradually or imperceptibly receding, or any gain by alluvion in the same manner as a compensation for what it might lose in other respects, would belong to the proprietor of the adjacent or contiguous lands. *Giraud* v. *Hughes*, 1 G. & J. 249. In this last respect there was no difference between waters navigable and not navigable. As to the former, the riparian owner had no right whatever at common law to make improvements into the water in front of his land. Laws have, however, been passed from an early period of our history, conferring such rights to a limited extent, and their construction by our courts will throw much light on the subject now under consideration.

In the case of non-navigable streams, the riparian owner was, and is still, entitled to the bed of the stream *ad filum medium aquae.* Thus not only accretions, but all formations rising above the water on his side of the middle line, whether natural or artificial, connected with the shore or otherwise, belong to him. The withdrawal of the water neither increases nor diminishes the validity of his title nor changes it in any respect. It merely changes the character of that which was his before, and enables him to subject it to uses of which it was previously incapable. *Browne* v. *Kennedy,* 5 H. & J. 205. In this condition of the law the Act of 1861-2, Ch. 129, codified as Art. 54, Secs. 37-39, was passed. * * * Thus, while formerly the owner of land adjacent to navigable water had only the right to the accretion, according to the technical meaning of that word, namely: any increase of the soil formed by the waters gradually or imperceptibly receding, or by alluvion in the same manner; now by Section 37 of the codified Act of 1862, he is upon the same footing in that respect as the owner of the land bounding on water not navigable. We are not prepared to go to the extent claimed by the counsel for the complainants in the construction of this section. We do not think it gives the riparian proprietor a title to the bed of the adjacent stream *ad medium filum aquae.* That would involve consequences which were never contemplated by the framers of the law, and is by no means warranted by the language they have used. The accretions alone are intended to be affected, not the bed of the stream before such accretions are formed. As to them, his rights are certainly enlarged, but to what extent it is not now important to inquire."

In *Goodsell* v. *Lawson, supra,* the chief question involved was the right of the riparian owner to improvements made into navigable waters in front of his lands. In the later case of *Linthicum* v. *Coan,* 64 Md. 439, the question was one of accretion to his lands likewise bordering on navigable waters; and in that case the court said: "The evidence for the plaintiff in the court below tended to prove, that at the date of the

patent for Linthicum's Comet, the river at ordinary high tide overflowed all the land in question, and that the portion of it east of Sweetzer's Bridge began to be formed some years after 1860, and the formation of land commenced from the edge of the main channel of the river, and increased in a northerly direction inland towards the Baltimore County shore of the river, and did not make outwards from the fast land on the shore. The evidence on the part of the defendant contradicted this testimony, and tended to prove that the river had been gradually filling up from the bank on the Baltimore County side towards the channel since 1846 or 1848, and that the flats and marsh on the bank of the river in 1854 were nearly in the same condition as they are now, except that at that time they were not so solid as they are now. There was also evidence on the part of the plaintiff that there was a great freshet in the river in or about 1868, which filled up the bed of the river very much, and deflected the main channel fifteen or twenty feet from its original course towards the Anne Arundel shore east of the bridge, and made a deposit of from fifteen inches to two feet of mud on the premises described in the declaration. It is thus seen that we are to determine the respective rights of the riparian proprietor, and the owner of the bed of the river. * * * It has been made a question in this case whether the patent for Linthicum's Comet did not take away from the riparian owners the right to such accretions as we have been considering. As it was issued before the passage of the Act of 1861-2, Chapter 129, it is of course not affected by this statute. *If the land covered by the patent had remained the property of the state, the riparian owners would have been entitled to the accretions under the circumstances above mentioned. It was a valuable right given to them by the law."*

The Act of 1862 was, of course, passed before the issuance of the patent in this case, and unlike the case from which we have just quoted, the Act applies.

As we have already said, the accretion in this case started at the edge of the channel of the river and extended toward

the shore, as in *Linthicum* v. *Coan,* where it was said that "*if the land covered by the patent had remained the property of the State, the riparian owners would have been entitled to the accretions under the circumstances*" *there shown.* Therefore, as the Act applies in this case, and as the facts are similar to the facts of that case, it would seem to follow, from what is there said, that the riparian owners in this case were, at the time of the issuance of the patent, and are now, entitled to the accretions for which the patent in this case was issued. If so, the patent should not have been granted, had its issuance been contested.

The Act was passed with the intention and for the purpose of enlarging the rights of riparian owners upon navigable waters of this State by giving to them accretions to their lands, to which, without the statute, they would not be entitled, and also by giving to them the exclusive right to make improvements in the waters in front of their lands; and while it has been said that it was not intended by the Act to give to such riparian owners the title to the bed of the stream (*Goodsell* v. *Lawson*) ; yet by the language of the Act, we do not think the accretions contemplated by it, to which the riparian owners are thereby entitled, are confined to those only that, in their formation, start at the shore and extend outwards to the channel.

As already stated, the riparian owners had the right to such accretions before the passage of the Act when they were imperceptibly formed, and now to say that their rights, enlarged by the statute, go only to the extent of adding thereto accretions which have been more rapidly and suddenly formed, from natural causes or otherwise, extending outward from the shore, would be giving the statute a very narrow construction and one that, we think, should not be adopted.

The Act prohibits the granting of patents that will impair or affect such rights of the riparian owners; and whether those rights have been impaired or affected by the issuance of

a patent is largely to be determined upon the facts and circumstances of each particular case.

In our opinion, had the issuance of the patent been contested, it, under the Act and the facts of this case, should not have been granted, as it is established by the facts in the case that the rights of the riparian owners would be impaired and affected by a grant of the accretions to which said riparian owners were then, and are now, entitled; for by a grant of these the riparian owners would not only be excluded from the use of the navigable stream, but as such accretions lie between the shore and the channel of the stream, the said riparian owners would be prevented thereby from making improvements in the waters in front of their lands. Therefore, as the appellants themselves have not a marketable title in the land sold (*Jay* v. *Van Bibber,* 94 Md., 690), they cannot grant such a title to the appellee, consequently the decree of the Court below dismissing the bill will be affirmed.

*Decree affirmed, with costs.*