RICHARD F. WICKS ET UX. *v.* P. STEELE HOWARD

[No. 1223, September Term, 1977.]

*Decided July 17, 1978.*

The cause was argued before MOYLAN, LOWE and WILNER, JJ.

*Gloria M. Belgrad,* with whom was *Paul M. Vettori* on the brief, for appellants.

*Leonard E. Wilson,* with whom was *Frank Thomas Howard* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

In Maryland, by common law rule, title to all navigable waters and to the soil below the mean high-water mark of those waters is vested in the State as successor to the Lord Proprietary who had received it by grant from the Crown; "and so it remains, unless it be included in some grant by the State, made prior to [March 3,] 1862". *Sollers v. Sollers,* 77 Md. 148, 152. See *Hawkins Point Light-House Case,* 39 F. 77, 79-80 and *Gould on Waters,* §§ 32, 42 (3d ed. 1900). Waters are deemed navigable for these purposes if, and only if, they are subject to the ebb and flow of tides. *Browne v. Kennedy,* 5 H. & J. 195. This is still the law of Maryland, to the extent that it has not been modified or abrogated by statute. *Van Ruymbeke v. Patapsco Ind. Park,* 261 Md. 470; *cf. Wagner v. City of Baltimore,* 210 Md. 615, 622, 624. In the absence of specific statutory authority to the contrary, therefore, the right to extend permanent improvements into the waters in front of one's land is not an inherent or common law riparian right. The inherent common law right is to the water's use, and that, of course, presupposes the concomitant right of access.

The right to extend improvements such as wharves and piers into the water is a statutory one, granted by the State as successor to the Lord Proprietary to enhance the right of riparian access to the waters. The original grant of the right to make and hold title to improvements in the waters in front

of one's land gave title of such improvements, not necessarily to the adjacent landowner by virtue of his ownership, but rather to the "improvers, their heirs and assigns forever", as "an encouragement for such improvers". Ch. 9, Acts of 1745 (repealed 1860). *Balt. & Ohio R. R. Co. v. Chase,* 43 Md. 23, 32-33.

In 1862 the General Assembly enacted Ch. 129, because of the

"Doubts entertained in regard to the extent of the rights of proprietors bounding on navigable waters . . . ."

The act subsequently codified as Md. Code, Art. 54, § 46 gave the "exclusive right" to make improvements into the waters in front of riparian land bounding on navigable waters to the "proprietor" of the land, and vested title to the improvements in the successive owners of the land as an incident of their ownership. No vested title either to the improvement or to the use of the submerged land upon which it was erected — or might rest — accrued to the riparian owner until the improvements had actually been completed. *Bd. of Pub. Works v. Larmar Corp.,* 262 Md. 24, 46.

Similar principles of right to improve and ownership were carried over in the Wetlands Act of 1970. Md. Code, Nat. Res. Art., § 9-201 states in pertinent part that the owner of land bounding on navigable water

" . . . may make improvements into the water in front of his land to preserve his access to the navigable water or protect his shore against erosion. After an improvement has been constructed, it is the property of the owner of the land to which it is attached."

There is no reason to believe that this restatement of the 1862 law carries with it any implication of such an interest vesting before an improvement is completed.

In the case at bar, the appellants prepared to assert their statutory right to erect a wharf or pier in front of their relatively recently purchased riparian property. They did not seek to construct a wharf perpendicular to their shoreline, nor

even within the framework of an imaginary extension of their property lines into the water. They contend that their (statutory) right to extend improvements into the water so as to enhance their common law right of access carries with it an implied right to have the wharf extend in a straight line to the nearest point where it would meet the channel perpendicularly, notwithstanding that the wharf would not be perpendicular to their shoreline, but would create an angle nearer 45°.

Appellants complain that since 1959 (16 years before appellants took title to their lot in May, 1975) appellee has "encroached" upon the waters appurtenant to their lot, derogating their recently acquired riparian right to make improvements, by virtue of a dog-leg shaped wharf jutting out from the shoreline. Although constructed entirely in front of appellee's own property (and within an imaginary extension of his boundary lines), it lay between appellants' lot and the point on the river channel toward which they sought to aim their pier. Appellants would be unable to construct their wharf in a straight line for a sufficient distance to reach the channel without ramming appellee's existing pier, because to reach the channel perpendicularly with a straight wharf from appellants' lot, it must extend at an oblique angle with the shoreline, cross the imaginary extension of the boundary between the parties' lands, and terminate at the channel directly in front of appellee's land. As shown in the record with plats and other exhibits, the situation is something like this:

Claiming a right to so construct a wharf, they asked the Circuit Court for Cecil County to compel the removal of appellee's pier or grant them money damages for having encroached upon their riparian "right".

The trial judge carefully set forth the evidence, his findings of fact and some of the guiding equitable principles persuasive to him in arriving at his conclusion. Appellants pose four questions, three of which attack the sufficiency of the evidence, and another contending that the trial court erred "as a matter of law".

"I. Whether the judgment of the trial court is erroneous as a matter of law because the Court failed to apportion riparian rights in the river in proportion to the shorefront dimensions of the riparian tracts.

II. Whether the Trial Court's judgment is clearly erroneous, unsupported by the evidence and arbitrary and capricious because:

    A. In determining Appellants' riparian rights boundaries it unfairly took into consideration riparian rights areas properly appurtenant to other riparian tracts.

    B. It is based upon an erroneous and inequitable formula for apportioning riparian rights in the circumstances of this case.

III. Whether the findings of the Trial Court as to estoppel and implied consent are unsupported by the evidence, clearly erroneous and arbitrary and capricious.

IV. Whether the Trial Court's findings as to comparative hardship are unsupported by the evidence, clearly erroneous and arbitrary and capricious."

Only if appellants could provide law holding that they have a right to construct a wharf in a direction from their land in

such a way as to maximize their convenience in striking the channel perpendicularly, could we find error in the decision as a matter of law. But there is no such authority. That the trial judge was not persuaded by some evidence of appellants that such directions had been taken by others in the geographical vicinity does not constitute error as a matter of law. As noted, the applicable statute (which establishes the construction rights of appellants) is in fact simply a legislative attempt to guarantee each riparian owner his well established common law right of access to navigable waters by granting to him the exclusive privilege of making improvements in State-owned waters abutting his property. It need hardly be noted that geographic variables preclude complete equality of access on a formula basis. The nature of the right is such that the landowner is protected against encroachments on this right of some access; but until the right is exercised, and the improvements actually completed, he has no vested interest in any particular imagined, proposed, or even partially finished construction project. *Williams v. Skyline Dev. Corp.,* 265 Md. 130, 155; *Bd. of Pub. Works v. Larmar Corp., supra,* at 44-50. There is no rigid method of apportioning the statutory riparian rights to construct improvements, the governing principle being merely that the division must be equitable, not necessarily equal. See Anno., Riparian Owners — Boundaries, 65 A.L.R.2d 143, 153, *et seq.,* and cases cited therein. While it may be true that some courts in some cases have fashioned the remedy urged upon us by appellants (which cases, we note, have been few and far between), no court has ever held that such a method should always be applied as a matter of law. We unhesitatingly decline to be the first.

In response to questions II, III and IV, we find sufficient evidence in the record, or inferences legitimately drawable therefrom, to have permitted the chancellor to reach the conclusions he set forth. It is his judgment from which this appeal was taken (not his opinion) and we are convinced that his judgment was correct. We are additionally convinced that the factors he considered were proper under the circumstances, and that the result reached was eminently

fair. As we are in accord with all of the reasons he ascribed, in affirming his judgments, we adopt his opinion as our own. A copy is appended herewith.

*Judgment affirmed.*
*Costs to be paid by appellants.*

*APPENDIX*

### "MEMORANDUM OPINION AND ORDER

This is a suit instituted by Complainants for injunctive relief or, in the alternative, damages, involving the erection and use of a dock or pier by Respondent, which facility is claimed to cross Complainants' lot, thus blocking, obstructing and denying them of their riparian rights to the Sassafras River.

The bill seeks: (1) An injunction against Respondent requiring him to remove the docks which are allegedly obstructing and denying Complainants of their riparian rights; or (2) damages to Complainants for wrongful acts committed by Respondent; and (3) for such other and further relief as the case may require.

The following material facts have been established by a preponderance of the evidence, in the opinion of this Court:

That the parties hereto are abutting property owners. Respondent is the owner of the marina and restaurant known as The Granary. Respondent described his shoreline property as being 455 feet in length. Complainants' abutting property is on the down-river or westerly side of the Granary property and measures 158 feet, more or less, along the river. Respondent Howard had obtained permission in 1959 from the Corps of Engineers to build the now-disputed pier. Limitations were placed on Respondent's right to construct the pier in such manner as not to injure any private property or invade any private rights, or to infringe on any Federal, State or local laws or regulations. Complainants acquired their property in October 1974 from Karl and Olga Savard. The Savards were abroad when the pier permit was granted

and did not return until November, when the construction of the pier was under way.

It is also found as a fact that Complainants own the adjoining marina known as Duffy Creek Marina; that they purchased it in 1974; that this marina now has some 132-133 rental slips (according to the testimony of Mrs. Wicks on cross-examination at the trial); that one lot owned by the parents of Mrs. Wicks separates their residential property from their marina property; that they rent this property from her parents, the Eldridges; that the Eldridges built the marina in 1956 or 1957; that Duffy Creek where the marina is now located was not navigable in 1952; that it has been made navigable by the former owners of the marina, the Eldridges, and now the Complainants, the Wicks; that there has also been considerable bulkheading to prevent erosion and to provide more slips and space for rent for boats in that area; that there had been a bar on the mouth of Duffy Creek which had been dredged to the east so boats could come in and out without the problem of striking bottom; that the Duffy Creek channel does fill in in winter and has to be dredged out from time to time; that the traffic has increased in the Granary area of Respondent due to activity at Duffy Creek Marina.

Mr. C. R. Webb, a land surveyor and graduate civil engineer, was called as Complainants' first witness. He testified as an expert. That his plat was introduced in evidence as Complainants' Exhibit #7; that this plat clearly shows the location of the properties involved as well as the approximate channel in the Sassafras River and the depth of waters off the respective properties; that the channel is wide and follows an irregular course; that this Court finds as a fact that there is navigable water in front of Complainants' property.

Mary Ross Eldridge was called upon to testify for Complainants. She is the mother of Complainant Carol E. Wicks. She stated that she developed the marina and dredged out the channel; that at one point a storm wiped out their slips in one area; that the sandspit on the property accreted toward the Granary dock.

Complainants also called as witnesses Mrs. Wicks' father, Capt. Edward F. Eldridge, and Capt. Lewis G. Salomon. Capt.

Eldridge testified on cross-examination that he started Duffy Creek Marina and that the marina has slips all up past his property next to his daughter's property; that when he took over where the marina is now located in 1958 it was marsh and he dredged out the creek, an area 300 by 30 feet, with a dragline; that Capt. Eldridge had been a licensed pilot on local waters since 1957 for 40-ton vessels; that there used to be an old derelict schooner back of a sand bar on Duffy Creek property; that Duffy Creek is navigable because it is dredged to six (6) feet; that one has to go 125 feet off the Wicks property before reaching twelve (12) feet of water.

Capt. Salomon testified as an expert, captain of boats, navigator and compass adjuster; that he was to locate the Sassafras River channel and locate from the channel area to the dividing line of Wicks and Howard properties and the riparian rights of Complainants; and that he proceeded to do so in the manner testified to and found the Howard pier trespassing over the riparian rights of the Wicks property.

Carol E. Wicks, one of the Complainants, testified that she and her husband own the Duffy Creek Marina. They purchased it in September 1974 from the Eldridges; that two or three months after purchasing the property they decided they wanted a private dock for their boat, a workboat type which they now keep in the marina; that they sought the help and advice of a surveyor as to the location of their pier on the property purchased from the Savards adjoining Howard; that their surveyor found an existing pier where they wanted to locate theirs; that they have never applied for a permit to construct a pier in front of their property; that they rent 132-133 slips at Duffy Creek Marina; and that they do not want to interfere with Duffy Creek boat traffic.

There was also testimony from a Maurice Preston who had been in marine construction for 18 years, building piers, docks, dredging and removing piers and docks when they had outlived their usefulness. Mr. Preston testified it would cost around $11,000 to remove the 136 piles of the existing Howard pier or dock, if old piles broke off it would cost $2500 per week to rent an extractor and that the removing of the dock would cost about $7650, for a total of $21,030 a possible figure, which could be more or less.

This Court agrees that there is little case law in Maryland setting forth riparian rights law. However, the Court wishes to call attention to the law in Corpus Juris Secundum and the American Law Reports and some Maryland cases, old and new:

65 CJS defines riparian rights as follows: Sec. 64, p. 219:

64. Rights as between Different Owners

Riparian rights ordinarily are coextensive with the water frontage of the land and must be exercised by the owner without undue interference with the riparian rights of others.

\* \* \*

In determining riparian or littoral rights of different owners of land abutting navigable waters, each case must be treated in an equitable manner so that, as far as possible, all property owners have access to the water and each shore line owner has his proportionate share of deep water frontage. Generally, the apportionment of riparian rights as between adjoining riparian owners is made by extending lines from the ends of the side lines at right angles to the line of the water front if the latter is straight or substantially so, subject to variation where the line of navigation is not parallel with the shore line, without regard to the direction of the dividing lines of the upland parcels.

In case of a decided convexity or concavity of the shore riparian rights are apportioned ratably between the riparian owners, as by straight lines drawn out to the line of navigability at such points as will divide the latter line proportionately to the several frontages on the shore, or by a line perpendicular to a tangent drawn on a circular shore. The rights of one owner as against others are not impaired by failure to exercise them.

\* \* \*

Determination of boundaries

A riparian owner is entitled, in conformity with his

lawful rights, to have extent of his enjoyment upon line of navigability of watercourse determined and marked and his boundaries defined, and the right is based upon principles of equity and a court of chancery is proper tribunal to make apportionment and to determine boundaries between coterminous owners.

\* \* \*

Upland boundaries

(1) Riparian rights do not necessarily extend into the waters according to upland boundaries nor do such rights under all conditions extend at right angles to the shore line.

American Law Reports Annotated (65 A.L.R. 2d, 184) discusses the riparian rights of abutting property owners in the following language:

14. Proportionate frontage projection on curving or irregular shores or channels.

Where the shore is curving or irregular in front of the riparian tracts involved, or the line of the channel, thread of the stream, or other outer limit line in the river is irregular, curving, or, if straight, not parallel with the general course of the shore, the method of apportionment and division usually adopted is to give each of the riparian tracts fronting along the same shore an abutting area in the river having a width on the channel line or other outer boundary line in the river proportionate to such tracts's frontage along the shore, the objective being to achieve an equitable apportionment of the available river area as between the riparian tracts fronting thereon.

Corpus Juris Secundum, Sec. 68, says at p. 231 in discussing remedies available to a property owner deprived of his riparian rights:

A riparian owner may pursue an appropriate remedy for the protection of his right of access, such

as an action for damages or for injunctive relief to compel the removal of an obstruction.

and at Sec. 68, under Navigable Waters, it is said:

Inasmuch as the obstruction of riparian access produces a private injury different from that suffered by the public at large, any act which makes the front of the riparian owner's land less accessible to the water is an injury for which an action for damages may be brought. Where the riparian owner is deprived of such right of access, he may also enjoin and abate the obstruction; . . . .

In an interesting and important comparatively recent case involving a thorough and careful study of riparian rights law in Maryland, *Owen v. Hubbard,* 260 Md. 146, 271 A. 2d 672, the landowner secured the consent of his neighbor to construct part of a bulkhead in navigable waters on which the neighbor's land bounded. The Court upheld a decree declaring that (1) the neighbor was a riparian owner, having title to that portion of the bulkhead in front of his property; and (2) the riparian owner had, by his consent, given the builder of the bulkhead an irrevocable license to use and maintain said bulkhead, backfill and supporting structures. In that case, Judge Digges said for the Court that

'. . . we have often been called upon to determine the respective rights of riparian owners whose properties adjoined each other at right angles. In those cases except where consent or a prior patent is involved we have stood by the "rule that adjoining owners on a concave shore must share available space for wharfing." '

In *Causey v. Gray,* 250 Md. 380, 243 A. 2d 575, which is mentioned in the Owen case, supra, Judge Barnes for the Court said that when the lot owner makes improvements in front of his lot complete title then vests in him in the *improvements provided* it is in *front* of his lot and does not appropriate the riparian rights of his neighbors. See also *B & O R.R. Co. v. Chase,* 43 Md. at 36-37.

A very recent case in the Daily Record of October 18, 1977, Department of Natural Resources v. Adams, although involving duck blind location, tells us again that a riparian owner to a body of water is a person who owns property bordering on that water.

In discussing riparian rights, a leading treatise states that:

'The owner of land contiguous to a navigable body of water acquires by that ownership certain rights — termed riparian rights — which include, principally, the right of access to the *navigable waters*; the right to build piers, wharves, docks and other improvements to the line of *navigation*; the right to reclaim land; and the right to accretion to his lands. These rights do not depend on ownership of the soil under water but upon lateral contact with the water. It is a universal rule that for riparian rights to attach to a tract of land the water must form a boundary of the tract.'

See 2 Shalowitz, Shore and Sea Boundaries, 534, 1964. Also see other authorities cited in this case. See also *Classen v. Chesapeake Co.,* 81 Md. 258, involving wharves and piers and right to make improvements into *navigable* water. In this case, *B & O R.R. v. Chase,* supra, at 33, is discussed and it is said in that case:

'. . . while the right of the shore owner to improve out from his property at a right angle to his shoreline is entirely just where the shoreline happens to be a straight line, it is manifestly unjust where the shore line is concave and if allowed might result in permitting the first occupant to encroach upon the natural boundary of his adjacent neighbor and crowd him out, leaving him without water rights, and thus depriving his property of its value.'

See also *Freed v. Miami Beach Pier Corp.,* 52 A.L.R. 1177. This case involves the erection of a pier by a riparian lot owner upon submerged lands of the State, not at right angles with the shore line of the lots, and will not be enjoined at the suit

of an adjoining lot owner, when the pier does not materially obstruct or impede access to the adjoining riparian lot, though the pier *does* obstruct distinct view, where the complainant *did not promptly act* while larger expenditures were being made in the construction of the pier under governmental authority. The case also discusses, and seems to conclude, that riparian rights do not necessarily extend into the waters according to land boundary lines, nor do such rights, under all conditions, extend at right angles with the shoreline; also, that riparian rights extend to owners to erect wharves and piers in *front* of their *riparian* holdings to facilitate access to and the use of *the navigable waters.*

See also list of plats and exhibits filed by both Complainants and Respondent which this Court feels important and has given proper consideration to, as follows:

Complainants' Exhibit 7—Plat of Wicks property (1975 or 1976) by Webb which shows Howard wharf is approximately 50 feet from the Wicks property line extended and does not encroach on the riparian rights of Wicks; also shows that water in front of Wicks property is 12 to 15 feet.

Complainants' Exhibit 8—Wetlands boundaries map. Shows properties including Duffy Marina and boat slips.

Respondent's Exhibit 2—Aerial map, 1938. No development where marina is now located.

Respondent's Exhibit 3—Aerial map, 1952. No pier built by Howard. No development of Duffy Creek.

Respondent's Exhibit 4—Aerial map, 1964. Shows location of Howard pier and development of Duffy Creek.

Respondent's Exhibit 5—Aerial map, 1972. Shows further development and extension of Duffy Creek Marina and boats in slips. Also shows Howard pier in controversy.

Respondent's Exhibit 6—1959 drawing dated October 1, of proposed piers and slips, showing proposed Howard pier to be 50 feet from Wicks property line extended.

## CONCLUSION

It is the opinion of this Court after careful review of the evidence presented, arguments of counsel, the exhibits filed in the case and the very able and helpful briefs filed by counsel for the parties, that Respondent Howard is not trespassing on the riparian rights of Complainants Carol E. and Richard F. Wicks.

Mrs. Wicks testified that they wanted to build a dock for their boat for their own use and, after getting their deed, they consulted a surveyor who after his survey informed them that Respondent's pier was in their riparian rights area. The Wicks made no further move until they filed suit after communicating with Respondent. The Wicks had never sought a permit to build the pier which they said they wanted for their boat.

It appears to this Court that Respondent's pier is in front of his lot. See Respondent's Exhibit #6, which indicates the pier to be 50 feet from the Wicks property line extended and at no point, in its entire length, toward navigable water, does it infringe on the Wicks' riparian rights.

It is also clear, to this Court, from Complainants' own Exhibit #7, a plat done by their own witness, Mr. C. B. Webb, that Respondent's pier is in *front* of his own lot and *does not interfere* with Complainants in the least. This plat also makes it obvious that Complainants have ample room to construct a dock or pier in *front* of and from their property to *navigable* water — which is shown on the plat to be 12 to 15 feet in depth.

It is naturally the conclusion of the Court under the law and facts in this case that Complainants do have a right to access to the channel. They do not have a right to the channel across the Howard property riparian rights and dock as testified to by Capt. Saloman. The exhibits clearly show and so does the

evidence, that, if they wish, they could build a pier *in front* of their property to navigable water and from there to the channel.

This Court, sitting in equity, must also consider the financial impact on Respondent if he were required to remove his dock, which it must be recalled was built some 50 feet from the adjoining property line, now Complainants' property. It is my opinion that the apparent benefits to Complainants are so disproportionate to the injury and expense Defendant would suffer that an Equity Court would not be justified to grant an injunction under the law and facts here before the Court.

It is my further view of the facts that the Savards had a duty to bring an action to prevent the erection of this dock or wharf by Howard before he had expended large sums in erecting that part of his marina. The evidence leads this Court to conclude that after Howard agreed to not build and use slips next to the Savard land there was an implied assent to its present location by the Savards.

As for the Complainants, they purchased the property knowing, or charged with knowledge, that the Howard dock was where it had been for some eighteen years. Their parents, who sold them the marina and were property owners in the immediate vicinity, had never objected to the Howard pier; nor had any State or Federal authorities ever objected to the location or the area appropriated by the wharf.

Lastly, but certainly very important in this Court's opinion, the success of Duffy Creek Marina and the popularity of boating in that area has brought about a proliferation of successful marinas in that part of the Sassafras River. Their only problem, as can be seen from the shore, is lack of slip space for boats.

The plats and testimony in the case confirm the conclusion that if the Court were to accept Complainants' theory of the law there would be less impact or interference with Duffy Creek boat traffic for some 132 customers than if Complainants were to build a dock or pier *in front* of their lot for their personal, private workboat. However, it is to be noted and recalled that Mrs. Wicks said words to the effect

that they did not want to interfere with *'Duffy Creek boat traffic.'*

### ORDER OF COURT

In conformity with the aforegoing Memorandum Opinion, It Is Thereupon ORDERED, this ___10 th___ day of November, 1977, by the Circuit Court for Cecil County, in Equity, that the Bill of Complaint filed by Complainants seeking Injunctive Relief be and the same is hereby DISMISSED, with costs to be paid by Complainants.

B. Hackett Turner Jr.
JUDGE"