Marine Air Ways, Inc., Claimant, *v.* State of New York, Defendant. (Claim No. 29905.)

Court of Claims, May 10, 1951.

*W. Royden Klein* and *Emanuel Greenberg* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Burns F. Barford* and *Lawrence H. Wagner* of counsel), for defendant.

Sylvester, J. This claim for damages is predicated upon the alleged deprivation or impairment of certain riparian rights of an upstream riparian owner, occasioned by the construction of a fixed highway bridge across the channel of Roslyn Creek, which is an outlet of Hempstead Harbor.

Claimant is the owner of two and one-third acres of land, part of which fronted on the westerly side of Roslyn Creek about 600 feet from the harbor, where, since 1928, it maintained a shipyard for the storing, outfitting and repairing of yachts and boats of all heights and description. Roslyn Creek itself is a navigable waterway and is at the southern end of Hempstead Harbor. The channel in front of claimant's property had been dredged to a depth of six feet at mean low water in 1934, and there was a rise and fall of tide therein of about eight feet.

The tidal water entered the creek from Long Island Sound through Hempstead Harbor and some fresh water also entered through a spillway at the head of the creek.

In 1949, the State, with permission of the Federal Government, constructed, as part of the North Hempstead Turnpike, a highway bridge with a fixed and permanent span across Roslyn Creek, about 200 feet north of claimant's property, with a clearance of fifty feet above mean high water. Accordingly, craft with masts exceeding fifty feet in height, could no longer navigate to and from claimant's site to the north of the highway bridge without lowering or removing their masts and entailing labor costs. This, it is claimed, has resulted in substantial loss of business and damage to claimant's plant and property and in greatly diminished property values.

This is not a case that involves the physical taking of any portion of the claimant's land. The claim arises out of the diminution of business resulting from the inability of or inconvenience to ships with masts over fifty feet to pass under the bridge. It is a claim that finds its basis in an alleged interference with claimant's riparian rights. Concededly, these rights, which include the right of access to the navigable part of the stream in front of the land, regardless of the ownership of the submerged bed, may not be taken for public use except upon the payment of just compensation. (*Gucker* v. *Town of Huntington*, 268 N. Y. 43; *Rumsey* v. *New York & N. E. R. R. Co.*, 133 N. Y. 79; *Sage* v. *Mayor of City of New York*, 154 N. Y. 61; *Matter of City of New York*, 168 N. Y. 134.) The riparian owner's advantage from contiguity to public waters is a legal right as against other individuals, but is nevertheless subject to the paramount right of the Federal or State Government to improve the waterway for the benefit of navigation. But where the public work is not connected with navigation (i.e., railroad bridge; speedway), though constructed under legislative authority, and the owner's access from the riparian's lands to the channel is cut off, recovery of damages has been allowed. (*Rumsey* v. *New York & N. E. R. R. Co.*, supra; *Matter of City of New York*, supra; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y. 378; *Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15.)

Distinguished from the right of access is the right of navigation, which is exclusively a public right. One is not to be confused with the other. The bridge here was constructed in accordance with proper public authorization. The claim that

it constitutes a public nuisance or an unlawful interference with navigation is not maintainable. Where there is a lawful interference with navigation, a member of the public has no right to compensation therefor, and the owner of land abutting the water is not in a better position to claim compensation so long as his right of access is not denied him. This view is supported by the weight of authority in this country. (*Gilman* v. *Philadelphia*, 3 Wall. [U. S.] 713; *Miller* v. *Mayor of City of New York*, 109 U. S. 385; *Whitehead* v. *Jessup*, 53 F. 707; *O'Brien* v. *Norwich & Worcester R. R. Co.*, 17 Conn. 372; *Clark* v. *Town of Saybrook*, 21 Conn. 313; *Richards* v. *New York, N. H. & H. R. R. Co.*, 77 Conn. 501; *Bailey* v. *Philadelphia, Wilmington & Baltimore R. R. Co.*, 4 Harr. [Del.] 389; *Depew* v. *Board of Trustees*, 5 Ind. 8; *Parker* v. *Cutler Milldam Co.*, 20 Me. 353; *Frost* v. *Washington Co. Ry. Co.*, 96 Me. 76; *Blackwell* v. *Old Colony R. R. Co.*, 122 Mass. 1; *Thayer* v. *New Bedford R. R. Co.*, 125 Mass. 253; *Brackett* v. *Commonwealth*, 223 Mass. 119; *Dover* v. *Portsmouth Bridge*, 17 N. H. 200; *Matthiessen & Wiechers Sugar Refining Co.* v. *Mayor & Aldermen of Jersey City*, 26 N. J. Eq. 247; *Clark* v. *Chicago & Northwestern Ry. Co.*, 70 Wis. 593; *Milwaukee-Western Fuel Co.* v. *Milwaukee*, 152 Wis. 247.) (See, also, Nichols on Eminent Domain [3d ed.], § 5, 792, par. [1]; 1 Lewis on Eminent Domain [3d ed.], § 102; and 1 Gould on Law of Waters [3d ed.], §§ 124, 149, 150.) A clear exposition of this principle is found in *Frost* v. *Washington Co. Ry. Co.* (*supra*), where it was said at pages 85–86:

" The only right of the plaintiff interfered with by the defendant company was his right of navigation by water in and out of the cove through the channel. This right of the plaintiff, however, was not his private property, nor even his private right. It could not be bought, sold, leased, or inherited. He did not earn it, create it, or acquire it. He did not own it as against the sovereign. The right was the right of the public, the title and control being in the sovereign in trust for the public and for the benefit of the general public, and not for any particular individual. * * * Unless the person authorized by statute to obstruct or close a navigable channel is required by the statute to make compensation to persons injured by such action, he is under no legal obligation to do so. In such case the inconvenience and loss however great are damnum absque injuria. The company has damaged the plaintiff but it has not wronged him. The defendant company has not interfered with the private property nor private rights of the plaintiff. It has law-

fully, by express authority from the sovereign, merely abridged the use of a public right which was within the exclusive control of the sovereign. For this lawful act it is not obliged to make any compensation to the plaintiff any more than to all other persons who might have occasion, however seldom, to navigate the channel.

" The authorities which support the foregoing statement of the law are numerous and uncontradicted." (Citing cases.)

In the case at bar, claimant's right of access to the harbor still obtains. The lawful interference with the public right of navigation, within the cited authorities, is without redress. In *Van Cortlandt* v. *New York Central R. R. Co.* (265 N. Y. 249) the Court of Appeals held that the State of New York may improve its highways as it deems best for travel even to the extent of erecting bridges without draws over navigable streams unless or until some act of Congress takes cognizance of the matter. It went on to say at page 255: " The power of the States over navigable streams in the absence of congressional action may be illustrated by the case of *Gilman* v. *Philadelphia* (70 U. S. 713, 720), where bridges without turnspans were erected over the Schuylkill, shutting out the customary passage of sailing vessels to the plaintiff's wharves. ' Vessels with masts could not pass, and the property of the complainant was rendered less valuable.' The court said: ' The injury to the property of the complainants will be entirely consequential. A large city is rising up on the opposite side of the river. The new bridge is called for by public convenience ' (p. 722). ' The defendants are proceeding to build the bridge under the authority of an act of the legislature of Pennsylvania. The Schuylkill River is entirely within her limits, and is "an ancient river and common highway of the State." For many years it has been navigable for masted vessels for the distance of about seven and a half miles only, from its mouth. * * * It must not be forgotten that bridges, which are connecting parts of turnpikes, streets, and railroads, are means of commercial transportation, as well as navigable waters, and that the commerce which passes over a bridge may be much greater than would ever be transported on the water it obstructs ' (pp. 721, 729). The plaintiff was denied relief."

In the case of *Sound Marine & Mach. Corp.* v. *Westchester Co.* (100 F. 2d 360, certiorari denied 306 U. S. 642) the corporation was the owner of property abutting on the waters of Mamaroneck Harbor, Mamaroneck, New York, upon which it

maintained a shipyard for building, repairing and storing boats. In 1929, the County of Westchester, purporting to act under a permit of the War Department of the United States, and the approval of the State of New York, laid a sewer pipe on the bottom of the harbor across the channel in front of the corporation's property in such a way as to decrease the depth of the channel at the pipe from 10 feet mean low water to approximately 6.8 feet mean low water. The corporation filed a libel in admiralty to compel the county to remove the pipe or, in the alternative, for compensatory damages. The channel waterway, across which the pipe line was laid, afforded access to the new main channel which the Federal Government had constructed in 1915. The libelant alleged that after the construction of the sewer pipe, boats with a draft in excess of six feet could not pass between the boat yard and the main channel at low tide. The Circuit Court of Appeals stated at page 363: "However, the question is presented as to whether or not in fact a tort or wrong was committed. Assuming that there was an easement granted to the appellee to lay the pipe and consent thereto was given by the War Department, appellee was required to lay the pipe in a trench in accordance with the permit of the War Department and the authority of the State. The easement granted by the State required the installation of the sewer pipe line in the same manner as the war department prescribed. We do not decide on this record whether or not the pipe was laid in a trench in conformity with the permit. If it was, the libel could not be sustained because the State has given its consent as had the Federal Government. A grant or consent to lay the pipe carried out as provided in the permit would foreclose objection by the appellant as a member of the public. Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. 421, 15 L. Ed. 435; Gilmon v. Philadelphia, 3 Wall. 713, 18 L. Ed. 96. A pipe line laid in accordance with such permits would not be a nuisance or an unlawful interference with navigation. *Appellant's rights of access as a riparian owner were only of access to the navigable part of the stream in front of its premises. They were not interfered with by the pipe line because appellant could at all times reach the channel.* Wisconsin v. Illinois, 278 U. S. 367, 49 S. Ct. 163, 73 L. Ed. 426; Shively v. Bowlby, 152 U. S. 1, 14 S. Ct. 548, 38 L. Ed. 331; City of New York v. Wilson & Co., 278 N. Y. 86, 102, 103, 15 N. E. 2d 408. *A pipe line laid in accordance with proper public authority so far as it impeded further navigation would not be actionable any more than the*

*lawful construction of a bridge across a navigable stream would be.* The riparian owner could not maintain a libel under such circumstances." (Emphasis added.)

It is concluded that claimant's property rights were not infringed by the erection of the fixed bridge across the harbor north of claimant's property; that his riparian rights entitle him to access to the waters, which he still retains, and that this right of access was not actionably interfered with by reason of the fact that ships with the taller masts could not conveniently negotiate the span. Judgment is directed dismissing the claim.

The court has viewed the property.

The foregoing constitutes the written and signed decision upon which judgment may be entered and it is therefore unnecessary to pass upon the proposed findings of fact and conclusions of law (Civ. Prac. Act, § 440).