566 A.2d 1101

**William B. BECKER et al.**

v.

**Ernest J. LITTY, Jr. et ux.**

**No. 139, Sept. Term, 1988.**

Court of Appeals of Maryland.

Dec. 20, 1989.

Opinion Modified upon Motion for Reconsideration
Feb. 7, 1990.

---

78

Michael J. Jacobs (Miles & Stockbridge, both on brief), Easton, for petitioners.

Eileen E. Powers (Brassel & Baldwin, P.A., both on brief), Annapolis, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

Boone Creek is a tidal estuary located near Oxford, Talbot County, Maryland.[1] A somewhat tortuous channel at its mouth leads to the Choptank River. The Creek is divided into what are known as the North and Southeast Branches. At the confluence of these branches is Sol's Island, containing perhaps as much as five acres of land. A bridge spanning the roughly 240 feet from Sol's Island to the mainland is the focus of controversy in this case, which raises, among other issues, important questions of riparian rights, the preemptive effect of a United States Coast Guard bridge permit, and standing. We shall resolve these issues, but, because the record before us clearly does not reflect a number of matters that bear on the ultimate disposition of the case, we shall remand under Maryland Rule 8–604(d), for further proceedings.

## I. Facts

In May 1986, appellee Suzanne Hanks Litty acquired title to Sol's Island, then an essentially uninhabited tract of land accessible only by air or via the waters of Boone Creek. She and her husband, appellee Ernest Litty (the Littys), decided to build a residence on the island. They also decided, it seems, that an aerial or aquatic commute would have its drawbacks. In October 1986, the Littys obtained a United States Coast Guard permit to build a private, one-lane, fixed bridge across the aforesaid 240 feet between Sol's Island and the mainland. The permit specified that the bridge should have three feet of vertical clearance over Boone Creek at mean high water.

Although the Coast Guard had given public notice of the application for the bridge permit, and also had notified

---

1. The Appendix is a map showing in detail the area we describe generally here.

certain federal and State agencies, some of the Littys' Boone Creek neighbors did not become aware of the situation until after the permit had issued. When they learned of the permit, those neighbors lost no time in protesting to the Littys, the Coast Guard, and others. Despite these objections, the Littys actively prepared for erection of the bridge.

On 11 January 1988, appellants William B. Becker and his wife Jean, along with 12 others who owned property, or in most cases both owned property and resided on the shores of Boone Creek, filed a complaint against the Littys seeking to enjoin construction of the bridge. Because the individual appellants assert essentially identical interests, we shall refer to them, collectively, as "the Beckers." On 2 February 1988, the Circuit Court for Talbot County (Wise, J.) issued an interlocutory injunction barring construction of the bridge. On 25 August it dissolved that injunction and granted summary judgment in favor of the Littys and against the Beckers. We frame the issues in this appeal by explaining the Beckers' theories below, and the trial court's reasons for rejecting them.

## II. Issues and Rulings in the Circuit Court

The Beckers' and their co-parties' properties are located at various spots on the North and Southeast Branches of Boone Creek. In the circuit court they asserted that they owned various vessels by which they navigated between the branches of the Creek and from the Creek to the Choptank River. They alleged that Boone Creek to the south and southeast of Sol's Island was too shallow to permit navigation as a practical matter. Thus, the only way they could move between the branches, and for those whose properties lay on the Southeast Branch, into the Choptank, was through the narrow channel between Sol's Island and the mainland. A bridge with only three feet of vertical clearance would effectively block this navigation. This, averred the Beckers, would deprive them of their riparian rights and cause substantial depreciation in the values of their properties. They claimed, moreover, that the Littys should have

obtained certain Talbot County permits for the bridge. And in their amended complaint, the Beckers insisted that a State Highway Administration (SHA) permit the Littys had somewhat belatedly acquired invalidated the Coast Guard permit because the SHA document called for five feet of vertical clearance rather than three.[2]

Judge Wise did not accept any of these arguments. He held that the Beckers were complaining about interference with a right of navigation, which is a public right, as opposed to one of the bundle of rights possessed by riparian owners. In view of the Coast Guard's jurisdiction over navigable waters, he opined that any injunction he might issue would not prevail over the Coast Guard permit. As to any conflict between the Coast Guard permit and the SHA permit, he saw that as a problem for the Littys and the agencies to resolve. He thought that Talbot County has no jurisdiction over navigable waters. In any event, he was of the view that the Beckers had shown no harm different from that suffered by the public in general, and so had no standing to raise possible violations of County law or, for that matter, of the SHA permit. Convinced that the Beckers "have had full opportunity to air their complaints and objections before the agencies empowered to consider them," Judge Wise concluded:

> The continuation of this proceeding represents an unjustified usurpation of jurisdiction vested by law with the U.S. Coast Guard and the State Highway Administration. This Court cannot, by way of injunction, subvert that jurisdiction or permit [the Beckers] to do [ ]an ["]end[ ]

---

**2.** In this opinion we shall discuss only the Coast Guard, SHA, and Talbot County permit problems. They are the only ones addressed on appeal. As a matter of fact, the Littys obtained other permits, *e.g.*, a Wetlands Permit from the Maryland Board of Public Works. But we in no way intend to engage here in any comprehensive discussion of all the permits that may be required when one seeks to bridge or to "wharf out" into navigable waters. We recently touched on some aspects of that problem area in *People's Counsel v. Maryland Marine*, 316 Md. 491, 506, 560 A.2d 32, 39 (1989).

run["] around the process for appealing decisions of administrative agencies.

As we have recounted, he granted summary judgment in favor of the Littys. The Beckers appealed to the Court of Special Appeals; we granted the writ of certiorari before any proceedings were had in that court. 315 Md. 140, 553 A.2d 706 (1989).

### III. Riparian Rights

Before us the Beckers restate their riparian rights argument. In essence, they assert that there can be no interference with what they claim is their right, as the owners of riparian property, to navigate on the waters of Boone Creek and the Choptank River. We assume, *arguendo*, that the bridge, if constructed pursuant to the Coast Guard permit, will have that effect. But we hold that Judge Wise did not err in rejecting this argument.

A riparian owner is "one who owns land bordering upon, bounded by, fronting upon, abutting or adjacent and contiguous to and in contact with a body of water, such as a river, bay, or running stream." *People's Counsel v. Maryland Marine*, 316 Md. 491, 493 n. 1, 560 A.2d 32, 33 n. 1 (1989). The Beckers fall within this definition. Riparian owners acquire various rights, both common law and statutory, by virtue of that status. *See, e.g., Maryland Marine*, 316 Md. at 501–506, 560 A.2d at 37–39; *Harbor Island Marina v. Calvert Co.*, 286 Md. 303, 315–322, 407 A.2d 738, 745–748 (1979); *Bd. of Pub. Works v. Larmar Corp.*, 262 Md. 24, 35–57, 277 A.2d 427, 431–443 (1971); Md.Code (1983 Repl. Vol., 1989 Cum.Supp.), Natural Resources Art., §§ 9–103 and 9–201 (part of Title 9, "Wetlands and Riparian Rights"). The " 'fundamental riparian right—on which all others depend, and which often constitutes the principal value of land—[is] access to water.' " *Maryland Marine*, 316 Md. at 502, 560 A.2d at 37 (quoting *Steinem v. Romney*, 233 Md. 16, 23, 194 A.2d 774, 777 (1963)).

■ Moreover, Boone Creek is navigable water. It matters not whether we apply the "ebb-and-flow-of-the-tide"

test, *Hirsch v. Md. Dep't of Nat. Resources,* 288 Md. 95, 99, 416 A.2d 10, 12 (1980), *Harbor Island,* 286 Md. at 315, 407 A.2d at 745, or the "navigable-in-fact" test, *see Owen v. Hubbard,* 260 Md. 146, 152 n. 1, 271 A.2d 672, 676 n. 1 (1970), *Wagner v. City of Baltimore,* 210 Md. 615, 625, 124 A.2d 815, 820 (1956). Boone Creek meets both tests, as does the Choptank River. But the riparian owner's right of access to water does not carry with it a concomitant private property right to navigate.

■ The riparian owner has just what we have stated—a right of access to water. That is, a right of access "to the water in front of his fast land." *United States v. 222.0 Acres of Land,* 306 F.Supp. 138, 151 (D.Md.1969). The owner has the right, under proper circumstances, to reach that water for purposes such as fishing, bathing, and making certain improvements into the water. *Id. See also Rayne v. Coulbourne,* 65 Md.App. 351, 367, 500 A.2d 665, 673 (1985). That is why, for example, the riparian owner is entitled to reliction and accretion. *Harbor Island,* 286 Md. at 314, 407 A.2d at 745; *Steinem,* 233 Md. at 23, 194 A.2d at 777–778. *See also* Natural Resources Art. § 9–201(a). But once the right of access is gratified, this particular right of a riparian owner goes no further. It does not encompass a right of free navigation.

The right to navigate on navigable waters is a public right, not one that attaches only to the owner of riparian property. "The public [has] a right, at common law, to navigate over every part of a common navigable river...." *Garitee v. M. & C.C. of Balto.,* 53 Md. 422, 436 (1880). As the Supreme Court of Ohio has put it:

Every riparian owner has the right of ingress and egress between his land and the water. In addition, as a member of the public, he has the right to travel on navigable streams. It is important to distinguish these rights. The right to go from his land to the river and from the river to his land is a private property right of the riparian owner. Navigation on public waters is exclu-

sively a public right. Everyone has an equal right to the use of the water for travel and transportation. *State v. Masheter,* 1 Ohio St.2d 11, 13, 203 N.E.2d 325, 327 (1964). And as another court said, regarding a riparian owner's attempt to obtain removal of a private bridge over a navigable channel,

> "An obstruction in front of one's own premises may prevent him from entering upon the highway, and thus interfere with a peculiar right. But when he is once upon the highway he is a traveler, like the rest of the public; and though an obstruction at a distance may as effectually prevent ingress and egress as when it is opposite his door, yet the right to pass along the way is one which he shares in common with the general public."

*Whitehead v. Jessup,* 53 F. 707, 709 (E.D.N.Y.1893) (quoting J. Gould, *Waters* 247–248 (2d ed. 1891)).

Other courts have reached similar results. *See, e.g., Miller v. Mayor of New York,* 109 U.S. 385, 3 S.Ct. 228, 27 L.Ed. 971 (1883); *Gilman v. Philadelphia,* 70 U.S. (3 Wall.) 713, 18 L.Ed. 96 (1866); *Marine Air Ways v. State,* 201 Misc. 349, 104 N.Y.S.2d 964 (Ct. of Claims 1951). *Ritter v. Standal,* 98 Idaho 446, 566 P.2d 769 (1977), which seems to reach a contrary conclusion, was based on an Idaho statute that made obstruction of a navigable estuary an actionable public nuisance. *Webb v. Giddens,* 82 So.2d 743, 745 (Fla. 1955), did reach a contrary conclusion. There, a riparian owner who rented boats was totally cut off from the main body of the lake where people used the boats. The Florida court allowed the owner access to the lake. In a later case, the Supreme Court of Florida did state that "a riparian owner's interest in waterway navigation is the same as a member of the public *except where there is some special injury to the riparian owner,*" but the injury was very different from the present case. *Game & Fresh Water Fish Com'n v. Lake Islands,* 407 So.2d 189 (Fla.1982). In *Lake Islands,* the property owners lost all access to their islands, whereas in the present case, the Beckers can still

get to their property by land and still have access to Boone Creek.

In short, other jurisdictions, like Maryland, hold that a general right to navigation is not a riparian owner's right, but a right of the general public. The Littys' bridge will not deprive the Beckers of their riparian rights of access to the water in front of their properties. They still have that access. The claimed interference with the public right of navigation has been authorized by the Coast Guard and the SHA, two bodies (as we shall see in Part IV of this opinion) empowered to deal with such matters. The correctness of those administrative decisions is not before us. So far as the record discloses, the Beckers did not appeal the Coast Guard decision or its several reaffirmations, although they had a right to do so under the federal Administrative Procedure Act. *Port of Jacksonville v. United States Coast Guard,* 788 F.2d 705 (11th Cir.1986); *Sisselman v. Smith,* 432 F.2d 750 (3d Cir.1970); *Delaware v. Bender,* 402 F.Supp. 1066, 1070 (D.Del.1975); *Delaware v. Bender,* 370 F.Supp. 1193, 1203 (D.Del.1974). With respect to the SHA permit, as we shall also see, the Beckers do not now question it; they insist that it be enforced.[3]

For the reasons stated, we reject the Beckers' riparian rights claim.

IV. Federal Preemption

We reiterate that two bridge permits were issued to the Littys: the Coast Guard three-foot clearance permit and the SHA five-foot clearance permit. Judge Wise declined to

---

**3.** The question of Talbot County permits we consider in Part V below, but that question has no bearing on navigation rights. We conclude, as did Judge Wise, that Talbot County does not have power to regulate navigation directly. This Court stated in *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 309, 407 A.2d 738, 742 (1979), that "a county may exercise [only] 'the authority with which [it has] been expressly, or as a reasonable implication, invested by law'" (quoting *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 410, 365 A.2d 279, 286 (1976)). The State of Maryland has not given Talbot County the power to regulate navigation directly.

review the validity of either permit. As we have just explained, we do not quarrel with that position. But we disagree with Judge Wise's view that the conflict between the two permits was not for him to address.

The Supremacy Clause of the United States Constitution establishes "[t]his Constitution, and the laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States [as] the supreme Law of the land." U.S. Const. art. VI, cl. 2. Thus, if a federal statute made "in Pursuance" of the Constitution is so comprehensive that there is no room for state action, or if the field is one in which the federal government has a dominant interest and it is one that the states have not traditionally occupied, federal preemption will be inferred. *Hillsborough County v. Automated Medical Labs.*, 471 U.S. 707, 713, 105 S.Ct. 2371, 2375, 85 L.Ed.2d 714, 721 (1985). If the federal law expressly states a preemptive intent, that intent will govern. *Id.* And "the Supremacy Clause ... invalidates state laws that 'interfere with, or are contrary to,' federal law." *Id.*, 471 U.S. at 712–713, 105 S.Ct. at 2375, 85 L.Ed.2d at 721 (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23, 73 (1824)). So where an actual conflict exists between a state and a federal law, the state law must fall. *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962) (Texas community property law invalid because it conflicted with federal regulations which allowed married purchasers of United States bonds to take advantage of survivorship provisions). The question is one of intent, express or implied.

Nevertheless, "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576, 595 (1981). *See* L. Tribe, *American Constitutional Law* § 6.25 at 479 (2d ed. 1988) (Supreme Court decisions display "an overriding reluctance to infer preemption in ambiguous cases"). Absent an explicit statement of Congressional

preemptive intent, the issue is largely a matter of statutory construction. L. Tribe, *supra*, § 6:26 at 481; *see Board of Trustees v. City of Baltimore*, 317 Md. 72, 115, 562 A.2d 720, 741 (1989); *Ward v. State*, 280 Md. 485, 490–491, 374 A.2d 1118, 1121 (1977).

In their effort to apply preemption principles to this case, the Littys point to the Commerce Clause of the United States Constitution, which gives Congress jurisdiction over navigable waters of the United States. U.S. Const. art. I, § 8; *Bridge Co. v. United States*, 105 U.S. 470, 26 L.Ed. 1143 (1882). We have already pointed out that Boone Creek is subject to tidal influence; it is part of the navigable waters of the United States. 33 C.F.R. § 2.05–25(a)(2) (1988).

With respect to any bridge over navigable waters of the United States, the current federal provision is the General Bridge Act of 1946, 33 U.S.C. § 525, *et seq.* Congress has granted bridge approval authority under this act to the Secretary of Transportation. 49 U.S.C.App. § 1655. The Secretary has delegated that authority to the Commandant, United States Coast Guard. 49 C.F.R. §§ 1.4(a)(3), 1.46(c)(7). In pertinent part, the General Bridge Act provides:

> The location and plans for [bridges over navigable waters] shall be approved by the Secretary of Transportation before construction is commenced, and, in approving the location and plans of any bridge, the Secretary may impose any specific conditions relating to the maintenance and operation of the structure which the Secretary may deem necessary in the interest of public navigation, and the conditions so imposed shall have the force of law.

33 U.S.C. § 525(b) (1982 Supp. V., 1988).

The Maryland statute pertaining to bridge approval, the one under which the SHA acted, is Maryland Code (1957, 1987 Repl.Vol., 1989 Cum.Supp.), Article 23, § 143, which tersely states:

No bridge may be erected on a navigable river, unless authorized by the State Highway Administration.

The Littys do not contend that Congress has occupied the entire field of permits for bridges over navigable waters. They could hardly do so in the face of *Cummings v. Chicago*, 188 U.S. 410, 428–431, 23 S.Ct. 472, 476–477, 47 L.Ed. 525, 530–531 (1903) (fact that Secretary of War required to approve construction of dock on navigable water does not deprive state of authority to forbid construction without a state permit). *See also Culley v. Hollis*, 180 Md. 372, 373, 25 A.2d 196, 196 (1942) (War Department permit does not "obviate the necessity of the consent of the State, but merely expresses the assent of the federal government so far as the public rights of navigation may be affected"). They do not claim explicit federal preemption. Their argument in essence is that the three-foot vertical clearance provision of the Coast Guard permit conflicts with the five-foot vertical clearance of the SHA permit; in those circumstances, they say, the Coast Guard permit must prevail.

It is true, as we have already noted, that when there is a clear conflict between federal and state provisions, in an area protected by the Supremacy Clause, the federal provisions will govern. Thus, if " 'compliance with both federal and state regulations is a physical impossibility,' " the state statute is preempted. *Maryland v. Louisiana*, 451 U.S. at 747, 101 S.Ct. at 2129, 68 L.Ed.2d at 596 (quoting *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248, 257 (1963)). And a state statute must give way if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581, 587 (1941). But if, despite the appearance of conflict, the state law enhances federal law, the Court has allowed the state provisions to stand. *See, e.g., Colorado Anti–Discrimination Comm'n v. Continental Air Lines*, 372 U.S. 714, 722, 83 S.Ct. 1022, 1026, 10 L.Ed.2d 84, 90 (1963) ("[t]o hold that a state statute

identical in purpose with a federal statute is invalid under the Supremacy Clause, we must be able to conclude that the purpose of the federal statute would to some extent be frustrated by the state statute"); *Huron Cement Co. v. Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960) (Detroit air pollution ordinance held valid even though it imposed stricter standards than federal air pollution regulations). This Court has taken a similar approach in the context of whether a state statute preempts a local ordinance. *See, e.g., Rockville Grosvenor, Inc. v. Mont. Co.*, 289 Md. 74, 422 A.2d 353 (1980); *Annapolis v. Annap. Waterfront Co.*, 284 Md. 383, 396 A.2d 1080 (1979); *City of Baltimore v. Sitnick & Firey*, 254 Md. 303, 255 A.2d 376 (1969).

The General Bridge Act of 1946 and the Coast Guard permit issued pursuant to it are intended to protect navigational interests. 33 C.F.R. § 114.10 (bridge laws intended to prevent interference with navigable waters except by permission of United States; permit decision must assure the "reasonable needs of navigation"). Article 23, § 143 and the SHA permit issued pursuant to it are, at least in part, intended to protect navigational interests; in any case, that is the perspective from which the SHA viewed the Littys' permit application. The Coast Guard has determined that three feet of vertical clearance will be adequate to safeguard federal navigational concerns. The SHA has determined that five feet of vertical clearance is required to safeguard Maryland navigational concerns. There is no suggestion that the five-foot provision in any way hampers federal navigation. Indeed, it would seem reasonably clear that if three feet is good for navigation, five feet will be even better. Thus, the SHA permit does not impinge upon federal navigation interests.

It is not physically impossible to comply with both permits—a bridge five feet above the water obviously is more than three feet above the water. As in *Florida Avocado Growers, supra,* both regulations (permits) can be enforced without impairing federal superintendence of the field. 373

U.S. at 142, 83 S.Ct. at 1217, 10 L.Ed.2d at 257. As in *Hillsborough County, supra,* the federal regulation (permit) stands as a minimum. A state regulation (permit) that is more protective of navigation is not invalid. 471 U.S. at 721, 105 S.Ct. at 2379, 85 L.Ed.2d at 726. *See also Ward v. State, supra* (Maryland and federal provisions governing operation of aircraft not in conflict).

The federal bridge regulations themselves make clear, as does the Coast Guard permit issued to the Littys, the possibility of the exercise of state or local authority with respect to bridges. "The Coast Guard is not responsible for any other permits that the applicant may need from other federal, state, or local agencies...." 33 C.F.R. § 114.10. *See Hillsborough County,* 471 U.S. at 714, 105 S.Ct. at 2375, 85 L.Ed.2d at 721–722 (statement accompanied federal regulations that " '[t]hese regulations are not intended to usurp the powers of State or local authorities to regulate ... procedures in their localities' "); *Ward,* 280 Md. at 497, 374 A.2d at 1124 (House Report on federal aeronautic crimes " 'emphasize[d] that it is not our intent to divest the states of any jurisdiction they now have' "). Moreover, if a state permit is required by state law, a copy of that permit should be submitted to the Coast Guard as evidence of "primary authority" to construct a bridge. 33 C.F.R. §§ 115.05, 115.50(f)(1). The permit issued in this case specifies that "[i]ssuance of this permit does not relieve the permittee of the obligation ... for compliance with ... any other federal, state or local authority having cognizance of any aspect of the location, construction, or maintenance of said bridge."

 ■  We hold, then, that the more restrictive (as to the Littys) vertical clearance provision of the SHA permit is not preempted by the Coast Guard permit. So far as preemption is concerned, the SHA document is valid and enforceable. The next question is whether the Beckers have standing to enforce it. We now consider that problem, along with the related issue of standing vis a vis the Talbot County zoning law.

## V.   Standing

Judge Wise, in concluding that the Beckers had no standing to raise questions about the Talbot County zoning law, reasoned that "[p]ublic wrongs cannot be redressed at the suit of individuals whose interest in the right asserted does not differ from that of the public generally, and an individual cannot restrain a public wrong unless he suffers special damage different from that suffered by the public at large." *Baltimore v. Employers' Ass'n,* 162 Md. 124, 131, 159 A. 267, 270 (1932).   The converse of this rule, however, also applies.   If one who seeks to redress a public wrong "has also suffered some special damage from such wrong differing in character and kind from that suffered by the general public," an action will lie.   *Weinberg v. Kracke,* 189 Md. 275, 280, 55 A.2d 797, 799 (1947);   *see also Inlet Associates v. Assateague House,* 313 Md. 413, 441, 545 A.2d 1296, 1310 (1988).

In *Weinberg,* property owners complained that a proposed activity would violate a zoning ordinance.   They alleged that the activity, and the resulting violation, would materially damage or depreciate their property.   Chief Judge Marbury, for the Court, wrote that the allegation of standing was sufficient to withstand demurrer and that the complainants were entitled to prove it.   189 Md. at 282, 55 A.2d at 800.   The *Weinberg* rule has been applied frequently.   *See, e.g., Richmark Realty v. Whittlif,* 226 Md. 273, 173 A.2d 196 (1961); *Pressman v. Baltimore,* 222 Md. 330, 160 A.2d 379 (1960); *Crozier v. Co. Comm. Pr. George's Co.,* 202 Md. 501, 97 A.2d 296 (1953).   These cases are zoning cases, but the rule has been recognized in other contexts as well.   *See, e.g., Glen Bur. Imp. Ass'n v. Appeal Bd.,* 213 Md. 407, 132 A.2d 451 (1957) (suit to attack allegedly illegal liquor license;   rule recognized but not applied;   proof of special damages inadequate).

The cases in which the rule is applied are typically those in which property owners in close proximity to some allegedly illegal activity claim that the activity will cause or is causing them special damage—devaluation of their proper-

ty. *See Richmark, Pressman, Crozier,* and *Weinberg,* all *supra.* The rule is not applied where proof of special damages is insufficient, as where the concerns expressed deal with a changing neighborhood and an interference with wholesome atmosphere for children, as opposed to property devaluation, *Glen Bur. Imp. Ass'n, supra,* or where the complainants' property is so distant from the allegedly illegal activity that any claim of decreased property value would be conjectural. *Loughborough v. Rivermass,* 213 Md. 239, 131 A.2d 461 (1957).

■ In the case before us, the Beckers allege that they are in reasonably close proximity to the bridge. William and Jane Becker, in fact, own the lot next to the mainland end of the bridge. They claim, among other things, that the bridge is illegal unless constructed with the five-foot vertical requirement of the SHA permit. They allege (in their amended complaint) that "[i]f the bridge is constructed as permitted by the Coast Guard," *i.e.,* with only three feet of clearance, they "will suffer significant decreases in property values by reason of the loss of access to the other half of Boone Creek and to deeper water." These allegations aver special damages to the Beckers by reason of the construction of a bridge with a three-foot vertical clearance, and these damages are indeed different from any that the general public will suffer. Property owned by members of the general public in, for example, Oxford, St. Michaels, or Easton will not likely be devalued by the construction of a three-foot high bridge to Sol's Island. In short, the Beckers' allegations of standing are sufficient under the *Weinberg* rule, and as in *Weinberg,* they should be allowed to prove those allegations. If they can do so, they are entitled to seek enforcement of the provisions of the SHA permit.

■ By the same token, upon proof of their allegations of standing, they are entitled to argue that a bridge permit is

required under the Talbot County zoning law.[4] Judge Wise recognized that "[t]he County may have interests not recognized by the permit process" of the Coast Guard and the SHA, but he believed that the Beckers had no standing to litigate possible enforcement of the County zoning law.

Without in any way suggesting that the Talbot County zoning law could or should apply here, we do not wish to foreclose that possibility on this record. *See Maryland Marine,* 316 Md. at 500, 560 A.2d at 36; *Harbor Island,* 286 Md. at 322, 407 A.2d at 748. For the reasons we have just stated, the Beckers (if they prove what they have alleged) do have standing to argue that the County zoning laws should be applied here. Whether they do apply or not is another question, and one that we do not decide on this record. The question was not decided below, and we think that a more extensive and more precise factual record, as well as fuller briefing, is required before it is resolved. At this stage, we say only that we reject the Beckers' view that the Littys are precluded from contesting the matter. A letter of 12 January 1988 from the County Planning Officer to the Littys, which the Beckers claim has a preclusive effect, was nothing more than a warning to the Littys that County law might require a bridge permit. It was not an order from which the Littys might have appealed, and their failure to appeal does not bar them from asserting that County laws do not require a bridge permit.

### VI. Disposition

We have held that the Beckers' riparian rights are not interfered with by the Littys' bridge; that the five feet of vertical clearance required by the SHA permit is a valid and binding requirement despite the Coast Guard permit's three-foot provision; and that the Beckers have alleged sufficient standing to seek enforcement of the SHA permit

---

4. The Beckers also assert that certain provisions of Code, Article 25, § 34 require county approval of private bridges. We agree with Judge Wise that these provisions, even if applicable to Talbot County, apply only to public bridges or those in which some public funds are involved.

and the Talbot County zoning law (or other local laws) to the extent it or they may apply. From this, it is apparent that the case must be remanded to the Circuit Court for Talbot County. There must be further proceedings, and possibly some amendment of the pleadings.

Those further proceedings should be designed to take into account a number of facts not in the record before us. Perhaps the most significant of those facts is that the Littys, gambling on their success in the trial court, apparently have proceeded to construct the bridge; at least we were told so at oral argument and in the Beckers' reply brief. The Beckers also claim that the bridge, as constructed, fails to meet the vertical clearance requirement of the SHA permit, as well as certain requirements of the Coast Guard permit as to pilings. Those matters can be explored on remand, along with the applicability and effect of Talbot County law and, of course, the matter of proof of the Beckers' allegations as to standing. The ultimate outcome of the dispute will depend upon resolution of these matters.[5] To achieve this, a remand under Maryland Rule 8–604(d) is appropriate. *See State Comm'n v. Prince George's Co.*, 285 Md. 205, 401 A.2d 661 (1979); *Earl v. Anchor Pontiac*, 246 Md. 653, 229 A.2d 412 (1967); *Farm Homes Corp. v. Adams*, 171 Md. 212, 188 Atl. 808 (1937).

*JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY VACATED WITHOUT AFFIRMANCE OR REVERSAL AND CASE REMANDED TO THAT COURT UNDER RULE 8–604(D) FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLANTS TO PAY ONE–THIRD OF THE COSTS AND APPELLEES TO PAY TWO–THIRDS.*

---

**5.** By listing certain issues to be explored on remand, we do not mean to preclude the trial court's consideration of others that properly may be brought before it.