666 A.2d 1332

**HOLIDAY POINT MARINA PARTNERS**

v.

**ANNE ARUNDEL COUNTY, Maryland, et al.**

**No. 252, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Nov. 7, 1995.

Certiorari Granted March 8, 1996.

Charles R. Schaller (Richard M. Hall, Marian C. Hwang and Miles & Stockbridge, on the brief), Baltimore, for appellant.

Patricia A. Logan, Assistant County Attorney (Phillip F. Scheibe, County Attorney on the brief), Annapolis, for appellee, Anne Arundel County.

Thomas J. Wohlgemuth, Annapolis, for appellee, intervenors, Selby Community Assn., Inc., et al.

Argued before MOYLAN, WENNER, and CATHELL, JJ.

WENNER, Judge.

Appellant, Holiday Point Marina Partners, filed a Complaint in the Circuit Court for Anne Arundel County, seeking a

declaration that Article 28, § 5–108(e) of the Anne Arundel County Code is preempted by State and federal law. After the trial court granted Anne Arundel County's Motion for Summary Judgment and denied appellant's motion, appellant noted this appeal, inquiring:

I. Did the Anne Arundel County Circuit Court commit reversible error by determining that Anne Arundel County did not exceed its authority under the Express Powers Act despite the clear language contained in Article 25A, Section 5(X) Md.Ann.Code by enacting Article 28, Section 5–108(e) of the Anne Arundel County Code?

II. Did the Anne Arundel County Circuit Court commit reversible error by finding that the comprehensive State statutory and regulatory scheme governing construction of marinas in State wetlands and protecting water quality, shellfish and consumers of shellfish did not pre-empt by implication Article 28, Section 5–108(e) of the Anne Arundel County Code?

III. Did the Anne Arundel County Circuit Court commit reversible error by determining that the general public laws and regulations of Maryland governing the location and construction of marinas in State wetlands and protecting water quality, shellfish and consumers of shellfish, did not pre-empt by conflict Article 28, Section 5–108(e) of the Anne Arundel County Code?

IV. Did the Anne Arundel County Circuit Court commit reversible error by not finding that the U.S. Army Corps of Engineers permit preempts Article 28, Section 5–108(e) under federal law?

Finding no error, we shall affirm the judgment of the circuit court.

## Facts

Appellant has owned and operated a commercial marina in Anne Arundel County since 1971. The property is zoned MB–1 and MC–1 under the Anne Arundel County Code, permitting

the operation of a commercial marina. In 1985, appellant began planning to expand its marina, contemplating 100 additional boat slips. Between 1985 and 1993, appellant participated in an exhaustive review of its expansion plans by the United States Army Corps of Engineers, the Maryland Department of Environment (MDE), the Maryland Department of Natural Resources, and Anne Arundel County. By 31 July 1993, appellant had obtained all required federal and State permits. Afterwards, appellant applied to the Anne Arundel County Office of Planning and Zoning (AAPZ) for a building permit. Appellant was informed by AAPZ that in order to acquire a building permit it was first necessary to obtain a variance from Article 28, § 5–108(e) of the Anne Arundel County Code. Section 5–108(e)(3) provides:

(e) Marina group districts and marina facilities may not be located, as measured in a straight line through the water, closer than the following distances to shellfish beds:

(3) One-half of a mile [or 2,640 feet] for a marina with more than 100 slips.

The site of the proposed expansion is approximately 2,350 feet from the nearest boundary of a natural oyster bar. After completion, the nearest pier head would come within 1,800 feet of the oyster bar. Despite County support, the AAPZ denied appellant's application for a variance.

## Discussion

On appeal, appellant presents several alternative theories why the County's zoning ordinance is void, all of them invoking the doctrine of legislative preemption. We shall discuss each in turn.

## I.

### Express Powers Act

■ Md.Code Ann. Article 25A, § 5 empowers charter counties to enact laws for the health, safety, morals, and welfare of its citizens, providing:

The following enumerated express powers are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI–A of the Constitution, that is to say:

## (A) *Local Legislation*

To enact local laws for such county, including the power to repeal or amend local laws thereof enacted by the General Assembly upon the matters covered by the express powers in this Article granted; to provide for the enforcement of all ordinances, resolutions, bylaws and regulations adopted under the authority of this article by fines, penalties and imprisonment, enforceable according to law as may be prescribed, but no such fine or penalty shall exceed $1,000.00 for any offense other than a fair housing law offense or imprisonment for more than six months; to provide for the enforcement of local fair housing laws by fines or penalties that do not exceed the fines or penalties provided in the Federal Fair Housing Act Amendments of 1988 for enforcement of similar federal fair housing laws; to provide for enforcement of all ordinances, resolutions, bylaws, and regulations adopted under the authority of this article by civil fines and penalties.

Such authority, however, is subject to the State's constitution and public general laws. Md. Constitution Art. XI–A, § 3. According to appellant, Article 28, Section 5–108(e) of the Anne Arundel County Code is inconsistent with Maryland's regulatory scheme governing the siting of marinas in relation to shellfish beds and therefore violates Md.Code Ann. Article 25A, § 5(X)(2)(v)(4) (1994 Repl.Vol.).[1] We have neither been referred to, nor have we discovered any such scheme.

---

1. Md.Code Ann. Article 25A, § 5(X)(2)(v)(4) provides that:
   v. [t]he powers granted to the county pursuant to this paragraph shall not be construed:
   4. [t]o *preempt or supersede* the regulatory authority of any State department or agency under any public general law. (Emphasis added).

As we see it, the purpose of the County zoning ordinance is to reduce the amount of human pathonegens and other pollutants emanating from marina facilities in waters adjacent to natural oyster bars and other shellfish areas. A report issued by the Anne Arundel County Office of Planning[2] concluded that discharge and runoff from such facilities contributed to high concentrations of harmful bacteria in shellfish, ultimately risking the health of those who consume them.

It is beyond cavil that a municipality may protect the health, welfare, and safety of their citizens by exercising its zoning authority. *Howard County, Md. v. Dorsey,* 292 Md. 351, 363, 438 A.2d 1339 (1982). Indeed, the plain language of Article 25A, § 5(X)(1)(i) provides:

### § 5.  Enumeration.

The following enumerated express powers are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI–A of the Constitution, that is to say * * *:

### (X)  Planning and Zoning

(1)(i) To enact local laws, for the protection and promotion of public safety, health, morals, and welfare, *relating to zoning and planning,* * * * (emphasis added).

It is also beyond question that a county may protect the environment by exercising its zoning authority. *See generally Mayor and Aldermen of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 399, 396 A.2d 1080 (1979) (environmental effects of additional boat slips could be considered in zoning); *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 66, 254 A.2d 700 (1969) (zoning plan which

---

**2.**  Anne Arundel County Boating and Marina Study.  Office of Planning and Zoning, Annapolis, Maryland.  August 1980.  The Study was undertaken in 1978 to determine the pattern and location of boating activity on the County's waterways, the *environmental impacts of boating and marinas,* and appropriate management techniques.

protected open areas and watershed proper consideration of public safety, health, and welfare).[3]

We therefore conclude that appellee was properly exercising its zoning authority under Md.Code Ann. Article 25A, § 5(X)(1)(i) in considering a marina's impact on the surrounding environment. To conclude otherwise would be to ignore the clear import of Article 25A and prevent municipalities from enacting legislation important to the health, welfare, and safety of its citizens.

## II.

### State Law Preemption

Appellant next contends that, since the State has enacted legislation governing water quality and protecting shellfish, the County is precluded from enacting zoning ordinances in any way touching or concerning those same issues. Specifically, appellant argues that, because the County zoning ordinance requires a marina's boat slips to be located farther from natural oyster beds than that mandated by state law, the County has preempted the State's legislation. We disagree, and explain.

The Court of Appeals has recognized at least three grounds upon which local ordinances must yield to State legislation on the same matter:

"(1) ordinances which conflict with public general law, (2) ordinances which deal with matters which are part of an entire subject matter on which the General Assembly has expressly reserved unto itself the right to legislate, and (3)

---

**3.** See also, *Ginsburg Development Corp. v. Town Bd. of Town of Cortlandt*, 150 Misc.2d 24, 565 N.Y.S.2d 371 (N.Y.Sup.1990) (legislatures must take environmental considerations into account when passing zoning regulations); *Albano v. Mayor and Tp. Committee of Washington Tp.*, 194 (N.J.Super.A.D.) 265, 476 A.2d 852 (1984) (land use regulations should take into account ecological and environmental concerns); *Graham v. Estuary Properties, Inc.*, 399 So.2d 1374 (Fla.1981) (protection of environmentally sensitive areas a proper concern within police power of state and local authorities) *cert. denied*, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981).

ordinances which deal with an area in which the General Assembly has acted with such force that an intent to occupy the entire field must be implied."

*Board v. Harker,* 316 Md. 683, 697, 561 A.2d 219 (1989) (quoting *McCarthy v. Bd. of Educ. of A.A. County,* 280 Md. 634, 639, 374 A.2d 1135 (1977)). Although not contending that the General Assembly has expressly preempted the field, appellant contends that the General Assembly has impliedly done so, or alternatively, that the County's zoning ordinance conflicts with the public general laws of the State. We shall address these theories in turn.

## A.

### Field Preemption

Appellant first points to a 28 August 1987 letter from MDE indicating the State's intention to restrict *harvesting* shellfish to no less than 200 feet from marinas with more than 100 boat slips. Consequently, appellant concludes that the County's zoning ordinance conflicts with the MDE's "assessment guidelines." In endeavoring to create a legislative field of separating marinas from shellfish beds, appellant carefully surveys the regulatory framework surrounding the water quality certification process.[4] Appellant, however, has failed to refer us to any legislation specifically dealing with siting marinas in relation to shellfish beds.[5] Rather, appellant attempts to persuade us that, when measured against the pervasive State and federal licensing schemes, together with the State's inherent

---

4. A person seeking authorization to dredge or fill tidal wetlands for a marina, or any other activity which may result in discharge into navigable waters must first obtain a water quality certification from the State. 33 U.S.C. § 1341(a)(1). The Maryland Department of the Environment has established water quality standards for State waters under Md. Environment Code Ann. §§ 9–314(a) (1993 Repl.Vol.).

5. We take cognizance of COMAR .08.05.17G *(siting guidelines)* discussed *infra,* which establishes factors to be considered when siting new marinas or expanding existing ones. In any event, it does not in any way provide for specific standards which could potentially conflict with § 5–108(e).

power to protect the Bay's resources, the County zoning ordinance may not address similar concerns. We are unpersuaded.

Appellant contends that the County's zoning ordinance is void because it "imposes restrictions on the issuance of a building permit based upon environmental considerations, such as the survival time of coliform bacteria in water, resulting in the imposition of the separation distances between marinas and shellfish." We remind appellant that it is permissible for a county to exercise its zoning authority to protect the health and welfare of its citizens by controlling land use impacts on the environment. Alternatively, appellant contends that "given the complexity and comprehensiveness of the State's regulation of the separation of marinas and oysters, water quality, and tidal wetlands, § 5–108(e) is preempted." *See Allied Vending v. Bowie,* 332 Md. 279, 631 A.2d 77 (1993).

To be sure, the Court of Appeals pointed out in *Allied* a number of secondary factors

> "it had considered in determining whether preemption by implication exists . . . (1) whether local laws existed prior to the enactment of the state laws governing the same subject matter, (2) whether the state laws provide for pervasive administrative regulation, (3) whether the local ordinance regulates an area in which some local control has traditionally been allowed, (4) whether the state law expressly provides concurrent legislative authority to local jurisdictions or requires compliance with local ordinances, (5) whether a state agency responsible for administering and enforcing the state law has recognized local authority to act in the field, (6) whether the particular aspect of the field sought to be regulated by the local government has been addressed by the state legislation, and (7) whether a two-tiered regulatory process existing if local laws were not preempted would engender chaos and confusion."

*Allied,* 332 Md. at 299, 631 A.2d 77 (citations omitted).

Appellant insists that § 5–108(e) creates regulatory chaos and confusion. Citing State and federal standards

governing water quality certification, appellant contends that the County zoning ordinance interferes with maintaining those standards. If that be so, we fail to understand why both the State and federal wetlands licenses obtained by appellant specifically note that appellant is not relieved from complying with local land use requirements.[6] We find it neither confusing nor chaotic that appellant must comply with State, federal, *and* local regulations.

The crux of appellant's position is that, since the State has dealt with the regulation of water quality in an effort to control the environment, aquatic resources (including shellfish), and human health, the County is precluded from accomplishing similar objectives by enacting a zoning ordinance. We disagree.

Md.Code Environment Ann. § 9–302 specifically states:

(a) *Purposes of subtitle.*—The purpose of this subtitle is to establish effective programs and to provide *additional and cumulative remedies* to prevent, abate, and control pollution of the waters of this State.

(c) *Department to carry out objectives.*—The Department *shall cooperate with local governments,* agencies of other states, and the federal government in carrying out the objectives of subsection (b) of this section (emphasis added).

If anything, this statute reveals that the legislature envisioned an environmental partnership between the State and local governments, rather than preempting local governments from dealing with the same concerns.

Though not conclusive of preemption, the "lack of reference to pre-existing local law is a factor to consider in deciding

---

**6.** The Water Quality Certification issued by the State specifically states:

This certification does not relieve the applicant of the responsibility for obtaining any other approvals, licenses, or permits in accordance with federal, State, or local requirements and does not authorize commencement of the proposed project.

The federal Wetlands license also provides that:

This license is subject to the following standard conditions:

b. The legal requirements of all federal, State, and local agencies shall be met.

whether the General Assembly intended to preempt a particular field." *Howard County v. Pepco,* 319 Md. 511, 529, 573 A.2d 821 (1990).

In *Pepco,* Howard County sought to impose additional requirements on the construction of overhead transmission lines carrying in excess of 69,000 volts. Noting that Md.Code Ann. Article 78 gives the Public Service Commission (PSC) plenary authority to regulate electrical transmission lines carrying in excess of 69,000 volts, the Court pointed out that despite the lack of reference to existing local laws, Article 78, § 54A "plainly demonstrate[s] an intent to formulate a comprehensive regulatory scheme to regulate exclusively the construction of overhead transmission lines designed to carry in excess of 69,000 volts." *Pepco,* 319 Md. 511 at 529, 573 A.2d 821. The Court also noted that "allowing counties to require special permits of utility companies, even when they qualify for a certificate from the PSC, would sanction an authority superior to that of the PSC." *Pepco,* 319 Md. at 529, 573 A.2d 821. Implicit in the Court's conclusion, however, is that Howard County was regulating a subject addressed by a comprehensive state regulatory scheme. Consequently, *Pepco* is inapposite.

Unlike the zoning ordinance in *Pepco,* appellee's zoning ordinance deals with a matter not specifically covered by State law. Even if the "assessment guidelines" have the force of law,[7] they only regulate the harvesting of shellfish. The "assessment guidelines" regulate neither the siting of marinas nor water quality.

Moreover, the *Pepco* Court was concerned that county interference with the construction of overhead transmission

---

7. The letter referred to by appellant was apparently drafted in response to concerns from the U.S. Department of Agriculture and local watermen regarding the potential contamination of shellfish from marina related discharges. Pursuant to Md. Natural Resources Code. Ann. § 4–742 (1974), the letter outlines the MDE's plans to restrict harvesting of shellfish within certain distances of marinas. In any event, it has nothing whatsoever to do with the siting of marinas in relation to shellfish beds.

lines carrying more than 69,000 volts would unnecessarily obstruct the PSC's mission of ensuring an adequate supply of electrical power to the citizens of Maryland. Likewise, Maryland's environmental laws ensure the protection of Maryland's natural resources. We do not believe, however, that appellee's zoning ordinance obstructs the State's goal of safeguarding the environment. Rather, it furthers that goal.

Perhaps most analogous to the case at hand is *Ad + Soil v. County Commissioners*, 307 Md. 307, 513 A.2d 893 (1986). Noting that "our cases indicate that the primary indicia of a legislative purpose to preempt an entire field of law, absent express statutory language to this effect, is the comprehensiveness with which the General Assembly has legislated in the field," *id.* at 328, 513 A.2d 893, the *Ad + Soil* Court found that, despite statewide legislation in the field of sewage management, State law did not preempt the location of sludge utilization sites. *Id.* at 334, 513 A.2d 893. The location of sludge utilization sites was subject to local zoning ordinances. The Court also noted that local zoning ordinances constitute a cornerstone of Maryland's system of land use control. *Id.* at 333, 513 A.2d 893. " '[I]n view of such a clearly established legislative policy, evidence of a countervailing legislative purpose to prohibit local zoning control ... must be strong indeed.' " *Harker*, 316 Md. at 683, 561 A.2d 219 (quoting *Ad + Soil, supra* ). Influential in the Court's *Ad + Soil* decision was that Title 9 of the Environmental Article is "replete with references to the concurrent legislative authority of local jurisdictions." *Ad + Soil*, 307 Md. at 326–27, 513 A.2d 893.

Similarly, COMAR 08.05.05.16 provides that in addition to its requirements, an applicant must also comply with the provisions of COMAR 08.05.05.04, which specifically provides:

H. Other Approvals.

(1) The Department [of the Environment] may suspend processing of an application for a structure or activity if the application is inconsistent with State, federal, or *local* land use requirements, including federal tidal wetlands authorizations under § 404 of the Clean Water Act of

1992 and § 10 of the Rivers and Harbors Act of 1899, critical area, *zoning,* special exception, variance, or conditional use approvals. The Department will make these consistency determinations in cooperation with the appropriate State, federal, and local regulatory agencies. Project approval under this chapter *does not relieve a licensee or permittee of the need to obtain other approvals* that may be required (emphasis added).

We have also noted that the Water Quality Certification Certificates issued by the State and federal authorities require that appellant comply with local requirements before commencing the expansion.

Moreover, COMAR 08.05.05.17 provides:

F. Marina Management Plan. The location of all new marinas or expansion of an existing marina shall be consistent with a marina management plan, if any, that has been approved by the local government. *If there is a conflict between a local marina management plan and this chapter, the more stringent regulation takes priority* (emphasis added).

Title 5 of the Anne Arundel County Code is such a plan. Appellant asserts that "a county may consider shellfish or other natural resources when determining where to establish marina zones ... but may not ... structure its zoning law so as to conflict with or supersede the several State laws and resulting regulatory programs that govern the separation of marinas and shellfish." To hold that the State has preempted § 5–108(e) would be to ignore the plain meaning of Md. Natural Resources Code Ann. §§ 9–101 through 9–603, as well as COMAR 08.05.05.17(H), cited above.

In sum, we conclude that the General Assembly has not impliedly preempted appellee's zoning ordinance regulating the siting of marinas. Appellant's attempt to patch together a comprehensive State scheme belies the fact that there is no such scheme.

## B.

## Conflict Preemption

■ Appellant also contends that § 5–108(e) conflicts with the State's public general laws and is thus preempted. Specifically, appellant asserts that § 5–108(e)'s requirement that marinas with more than 100 boat slips be no closer than ½ mile from natural oyster beds is preempted by the MDE's Assessment Guidelines. *See supra,* n. 7. Once again, we point out to appellant that the "Assessment Guidelines" upon which it relies have nothing whatsoever to do with siting marinas. While we recognize that the MDE issues water quality certification permits after finding the proposed project will not adversely effect shellfish and other aquatic life, we do not believe it directly conflicts with § 5–108(e).

Appellant asserts that, while the County may consider environmental concerns when drafting zoning ordinances, it may not establish a separation standard that conflicts with State and federal public health and environmental law. Paradoxically, appellant concedes that appellee could have excluded marinas altogether, but asserts that once it decided to include marinas, the County was not free to establish a separation standard. Following appellant's argument to its logical conclusion, if a county's zoning ordinance endeavors to control the environment in a manner which the State or federal government has previously addressed, the County is precluded from addressing those same issues. Such a conclusion is without merit, as a county's zoning authority does not terminate at the shoreline. *Harbor Island Marina v. Calvert County,* 286 Md. 303, 319, 407 A.2d 738 (1979).

■ Moreover, appellant's suggestion that § 5–108(e) conflicts with Md. Natural Resources Code. Ann. § 9–201, is also without merit. Section 9–201 codifies a riparian land owner's right to construct a wharf out into state wetlands. That right, however, is subject to local zoning requirements. *Harbor Island,* 286 Md. at 315–22, 407 A.2d 738.

■ Turning next to COMAR, appellant maintains that § 5–108(e) conflicts with COMAR .08.05.05.16G(2). Nonetheless, appellant makes no reference to COMAR .08.05.05.16F, which specifically provides that "if there is a conflict between a local marina management plan and this chapter, the more stringent regulation takes priority."

■ Finally, appellant maintains that, because both the State and federal governments have issued wetland permits authorizing appellant's expansion, a conflict exists. Appellant again fails to recognize that the State and federal permits are subject to local land use requirements.

We agree with appellee that Anne Arundel County "may not prohibit what the State by general public law has permitted, but may prohibit what the State has not expressly permitted." *City of Baltimore v. Sitnick & Firey,* 254 Md. 303, 317, 255 A.2d 376 (1969). As the Court of Appeals pointed out in *Sitnick & Firey,* simply because the state prohibits an activity in a certain field does not necessarily mean that all other aspects of that same field are free from local regulation. *Id.* at 317, 255 A.2d 376. In other words, assuming that the MDE guidelines have the force of law and expressly deal with the siting of marinas, the mere fact that the State prohibits harvesting shellfish within 200 feet of marinas having 100 or more boat slips does not exempt appellant's expansion project from complying with the County's zoning ordinance.

As the Court noted in *Board v. Harker,* "[t]his is not a case of a political subdivision prohibiting by local law what a State by public general law has permitted ... rather, it expressly allows" appellant to proceed with its project "subject to compliance with zoning regulations." 316 Md. at 699, 561 A.2d 219. Since both the State and federal wetland permits are subject to compliance with local land use requirements, we do not believe that the County's zoning ordinance has been preempted. As we see it, the fact that the State Water Qualification Certificate and Anne Arundel County zoning ordinance consider the same factors is irrelevant. Thus, there is no conflict.

## III.

### Federal Preemption

■ Appellant also contends that § 5–108(e) is preempted by the Rivers and Harbor Appropriation Act [8] and the Clean Water Act.[9] Pointing out that the Army Corps of Engineers issues permits only after an exhaustive review of a proposed project's potential environmental impact, appellant maintains that permit approval is tantamount to federal approval of appellant's expansion project. Appellant is but partly correct. Citing *Becker v. Litty*, 318 Md. 76, 566 A.2d 1101 (1989), appellant maintains that it is impossible to simultaneously comply with the federal permit and appellee's zoning ordinance.

In *Becker*, the United States Coast Guard authorized the construction of a bridge three feet above the water, although the Maryland Department of Transportation required that bridge to be five feet above the water. As the *Becker* Court concluded that it was not physically impossible to comply with both requirements, the federal standard did not preempt State law. Similarly, in the case *sub judice*, we fail to see how the County's ½ mile separation standard would make it impossible for appellant to comply with the State and federal permits.

We remind appellant that the 200 foot limit referred to in the MDE letter is a *minimum* distance requirement. Even assuming *arguendo* that the same standard applies to the separation of marinas and natural oyster bars (and we are of the opinion that it does not) it is not impossible to comply with two minimum distance requirements where one is greater than the other. Indeed, if appellant complies with the County's minimum ½ mile standard, it is beyond argument that it also complies with the State's minimum 200 foot standard. Thus, dual compliance is possible.

---

8. 33 U.S.C. §§ 401–467.

9. 33 U.S.C. §§ 1251–1387.

Once again, however, appellant ignores the fact that the federal permit is conditioned upon compliance with local land use requirements and neither addresses, nor attempts to regulate, the siting of marinas in relation to shellfish beds. Not only can appellant comply with the County's land use requirements, the federal permit is conditioned upon such compliance.

**JUDGMENT AFFIRMED. APPELLEES' MOTION TO STRIKE IS DENIED. COSTS TO BE PAID BY APPELLANT.**